Ronald PAVEY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 39A01–0101–CR–19.

Court of Appeals of Indiana.

March 5, 2002.

---

Wilmer E. Goering, II, Eckert Alcorn Goering & Sage, Madison, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Ronald Pavey appeals his conviction for Murder following a jury trial. He presents several issues for our review which we restate as:

1. Whether the trial court abused its discretion when it granted the State's motion for mistrial.

2. Whether his retrial was barred by the Double Jeopardy Clause of the United States Constitution and Article I, Section 14 of the Indiana Constitution.

3. Whether the trial court erred when it admitted into evidence items police seized from his apartment.

4. Whether the trial court erred when it permitted two witnesses to testify regarding his prior bad acts.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On April 8, 1999, Barbara Jackson was walking in a wooded area in Switzerland County when she saw a woman's body lying in a creek. Jackson notified police, who identified the dead body as that of Patricia DeChristopher. In the course of their investigation, police learned that DeChristopher was last seen on April 5, 1999, at Hilljack's bar, accompanied by Pavey and his roommate, George Liapis.

Police obtained a warrant to search Pavey and Liapis' apartment, where they seized three black leather jackets and two cameras from the living room, and a blanket from Pavey's bedroom. Subsequent forensic analysis of one of the jackets revealed the presence of DeChristopher's blood, and, after police developed the film in one of the cameras, they discovered a photograph of DeChristopher lying half-nude on Pavey and Liapis' living room floor. In addition, Liapis agreed to talk to police and eventually told them that Pavey killed DeChristopher. Liapis described how he and Pavey drove DeChristopher to a wooded area, where Pavey tried to strangle DeChristopher. Pavey then slit DeChristopher's throat with a knife.

The State charged Pavey with murder. At trial, during his opening statement, Pavey's attorney informed the jury that Liapis had entered a plea agreement with the State, and he stated:

[Liapis] has a story where he's negotiated an agreement with the Prosecutor to testify, but the sword of Damocles is still hanging over his head because if the Prosecutor does not like what his testimony is, then she can withdraw his deal where he gets only less than half of the possible sentence.... So under the possible 65 he gets 30 as long as he testifies to the satisfaction of the Prosecutor. So now there's a version the Prosecutor likes, and it's been bought and paid for. So in evaluating Mr. Liapis's credibility, keep in mind your common sense application here considering that he's got to please the Prosecutor in his testimony.

At the end of Pavey's opening statement, outside the presence of the jury, the State moved for a mistrial on the basis that Pavey's counsel had mischaracterized Liapis' plea agreement in a manner that substantially prejudiced the State. After listening to a tape of the above-referenced portion of the opening statement, and after listening to argument from both parties, the trial court granted the State's mistrial motion and dismissed the jury.

At retrial, Pavey's counsel again referred to Liapis' plea agreement in his opening statement, quoting portions of the agreement regarding its voidability by the State and stating, "Who does [Liapis] want to please if he wants to proceed with his plea agreement?" During the course of the trial, over Pavey's objection, the trial court permitted the State to introduce into evidence the blood-stained leather jacket, the photograph of DeChristopher in the apartment, and fibers found on the blanket taken from Pavey's bedroom. Also over Pavey's objection, the trial court allowed two State's witnesses to testify that Pavey had previously talked to them about killing people. The jury found Pavey guilty as charged, and the trial court entered judgment of conviction accordingly. The court sentenced Pavey to sixty-five years' incarceration. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Mistrial

 Pavey first contends that the trial court abused its discretion when it

granted the State's motion for mistrial following his opening statement. The decision to grant a motion for mistrial lies within the sound discretion of the trial court. *Palmer v. State*, 486 N.E.2d 477, 483 (Ind.1985). The trial court's decision is afforded great deference on appeal because the trial court is in the best position to gauge the surrounding circumstances of the event and its impact on the jury. *Mack v. State*, 736 N.E.2d 801, 803 (Ind. Ct.App.2000), *trans. denied.* The declaration of a mistrial is an extreme action which is warranted only when no other recourse could remedy the perilous situation. *Palmer*, 486 N.E.2d at 483.

The United States Supreme Court has addressed the propriety of a mistrial after the defendant's counsel makes "improper and prejudicial remarks during his opening statement to the jury." *Arizona v. Washington*, 434 U.S. 497, 511, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). The court stated:

> We recognize that the extent of the possible bias cannot be measured.... In a strict, literal sense, the mistrial was not "necessary." Nevertheless, the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment.
>
> * * *
>
> An improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal. Indeed, such statements create a risk ... that the entire panel may be tainted. The trial judge, of course, may instruct the jury to disregard the improper comment. In extreme cases, he may discipline counsel, or even remove him from the trial.... Those actions, however, will not necessarily remove the risk of bias that may be created by improper argument. Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases. The interest in orderly, impartial procedure would be impaired if he were deterred from exercising that power by a concern that any time a reviewing court disagreed with his assessment of the trial situation a retrial would automatically be barred.

*Id.* at 511–12, 98 S.Ct. 824.

Here, Liapis' plea agreement includes the following relevant provisions:

> 2. The Defendant understands that this agreement is conditioned upon the defendant's complete cooperation ... in the investigation and prosecution of Ronald W. Pavey.... Complete cooperation is defined as follows: a. George Liapis shall be completely truthful about his role and the role of Ronald W. Pavey in the murder of Patricia DeChristopher[;] ... b. George Liapis shall cooperate fully with [the Prosecutor;] ... [and] d. George Liapis shall testify truthfully [at Pavey's trial.]

As we have noted, in his opening statement, Pavey's counsel told the jury that Liapis' testimony had been "bought and paid for," and that Liapis had to "please the Prosecutor in his testimony." Pavey's counsel also stated that the State could revoke the agreement if it did not "like" Liapis' testimony. We agree with the State that there is a significant difference between the plea agreement, which required that "Liapis shall be completely truthful," and the characterization that Liapis' testimony had been purchased and had to "please" the State. Such a mischaracterization creates a risk that "the

entire panel may be tainted."[1] *See Arizona,* 434 U.S. at 512, 98 S.Ct. 824. As such, we "start from the premise that defense counsel's comment[s were] improper and may have affected the impartiality of the jury." *See id.* at 511, 98 S.Ct. 824.

Pavey maintains that the trial court abused its discretion when it granted the State's mistrial motion because the State failed either to make a prompt objection or request an admonishment. The State responds that its mistrial motion at the conclusion of Pavey's opening statement was timely and that the trial court properly granted the motion. We agree with the State.

 In support of his contention, Pavey relies on the rule set out in *Etienne v. State,* 716 N.E.2d 457, 461 (Ind.1999), that "a defendant [must] object to alleged misconduct ... [and] also request an appropriate remedy." Generally, the correct procedure is to request an admonishment. *Id.* However, if counsel is not satisfied with the admonishment or it is obvious that the admonishment will not be sufficient to cure the error, counsel may then move for a mistrial. *Id.* Failure to request an admonishment or move for a mistrial results in waiver of the issue. *Id.*

In *Maldonado v. State,* 265 Ind. 492, 355 N.E.2d 843, 848 (1976), our supreme court noted: "a prompt objection affords the trial court an opportunity to prevent or remedy prejudice to a defendant without the considerable waste of time and resources involved in the reversal of a conviction, and for this reason a contemporaneous objection is required as a condition to appellate review." But this rationale does not apply where, as here, defense counsel's misconduct prejudices the State, and there is no risk that the defendant will be wrongly convicted as a result of the misconduct. In addition, where the defendant is appealing from the trial court's grant of the State's motion for mistrial, whether the State has preserved the error for appellate review is not an issue. *See Corcoran v. State,* 739 N.E.2d 649, 655 (Ind.2000) (noting appellate recourse not available for review of alleged trial misconduct when *complaining party* failed to timely object at trial). Finally, in this case, the trial court was not denied any opportunity to prevent or remedy prejudice to the State because it implicitly found that an admonishment would not suffice to cure the harm.[2] *See, e.g., Holsinger v. State,* 750 N.E.2d 354, 366 (Ind.2001) (J. Dickson, concurring) (quoting *Dresser v. State,* 454 N.E.2d 406, 408 (Ind.1983), for rule that "[w]here it is obvious, from the nature and degree of misconduct, that no admonishment could suffice, the motion for one may be dispensed with.")

 And while the State did not make a contemporaneous objection, the State

---

1. We note that the State raised other objections to Pavey's opening statement, including a reference to Liapis as a "liar." But the trial court's decision to grant the State's motion for mistrial appears to rest solely on the references to Liapis' plea agreement. As such, we only address the impact of those challenged statements.

2. Pavey maintains that had the State made a contemporaneous objection, an *immediate* admonishment would have remedied any prejudice. But, given the nature of the prejudice here, we conclude that no admonishment would have sufficed to cure the harm, whether immediate or at the close of Pavey's opening statement.

Pavey is correct that the failure to request an admonishment *or move for a mistrial* following alleged misconduct results in *waiver* of the issue. *See Robinson v. State,* 693 N.E.2d 548, 552 (Ind.1998). However, not only did the State satisfy this rule when it moved for a mistrial, but, again, waiver is not an issue here. As such, Pavey's argument on this point is without merit.

promptly moved for mistrial. As such, we think the trial court properly exercised its discretion in ruling on the motion. In *Arizona v. Washington,* the trial court ordered a recess following the defendant's opening statement, and it was only following that recess that the State moved for a mistrial based upon the prejudicial remarks defendant's counsel made during opening statement. *See Arizona v. Washington,* 546 F.2d 829, 831 (9th Cir.1976), *rev'd,* 434 U.S. at 497, 98 S.Ct. 824. We conclude that the State's motion for mistrial at the close of Pavey's opening statement was timely.

▉ Pavey also maintains that an admonishment would have cured the alleged harm or, in the alternative, that the State was not prejudiced to such a degree that a mistrial was warranted. But we accord the trial court great deference on appeal since it is in "the best position to gauge the circumstances and probable impact on the jury." *See Wright v. State,* 593 N.E.2d 1192, 1196 (Ind.1992), *cert. denied,* 506 U.S. 1001, 113 S.Ct. 605, 121 L.Ed.2d 540 (1992). The trial court contemplated an admonishment, gave both parties the opportunity to argue their positions on the issue, and listened to a tape of Pavey's opening statement before resolving to declare a mistrial. Pavey's counsel deliberately gave the jury an inaccurate description of Liapis' plea agreement in stating that the Prosecutor could withdraw the plea if she did not "like" his testimony. *See id.* (noting defendant "deliberately" put references to polygraph before jury; distinguishing from cases where such references were made inadvertently). Under these circumstances, and given our standard of review, we conclude that the trial

court did not abuse its discretion when it granted the State's motion for mistrial.

### Issue Two: Double Jeopardy

▉ Pavey next contends that both the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article I, Section 14 of the Indiana Constitution barred his retrial.[3] The Fifth Amendment prevents the State from placing a defendant in jeopardy twice for the same offense. *Brown v. State,* 703 N.E.2d 1010, 1015 (Ind.1998). Once jeopardy has attached, the trial court may not grant a mistrial over a defendant's objection unless "manifest necessity" for the mistrial is found. *Id.* (quoting *Arizona,* 434 U.S. at 505, 98 S.Ct. 824). In the absence of manifest necessity, discharge of the jury serves as an acquittal. *Id.* The standard for manifest necessity is that trial courts are authorized to discharge a jury:

> whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.

*Id.* (quoting *United States v. Perez,* 9 Wheat. 579, 22 U.S. 579, 6 L.Ed. 165 (1824)). And as the court elaborated in *Arizona,* these words "do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge." *Id.* (quoting *Arizona,* 434 U.S. at 506, 98 S.Ct.

---

**3.** Because neither party presents a cogent argument as to why the analysis would be different under the Indiana Constitution, we will

address only the federal double jeopardy claim. *See State v. Hurst,* 688 N.E.2d 402, 403 n. 1 (Ind.1997).

824). "Necessity" is not to be interpreted literally; there need be only a "high degree" of necessity before concluding that a mistrial is appropriate. *Id.* (quoting *Arizona*, 434 U.S. at 506, 98 S.Ct. 824).

One important factor in determining whether manifest necessity exists is whether the reason for granting the mistrial can be laid at the feet of the State. *Id.* If the error in the proceedings is the fault of the prosecution, then the burden on the State to show manifest necessity is much higher. *Id.* at 1015–16. Here, since it was Pavey's counsel who made the challenged statements to the jury, the State need not meet this higher standard. Indeed, Pavey concedes that where the defendant is responsible for the error, and the defendant's conduct was purposeful, "then the defendant cannot claim he has been subjected to double jeopardy in new proceedings brought about by his intentional misconduct in the original proceedings." *See Brown v. State*, 181 Ind.App. 102, 390 N.E.2d 1058, 1063–64 (1979).

We find the mischaracterization of Liapis' plea agreement to have been improper and highly prejudicial to the State, and the trial court was in the best position to assess the possible impact of those statements on the jury. *See Arizona*, 434 U.S. at 515, 98 S.Ct. 824. Moreover, Pavey's purposeful conduct caused the prejudice, and he cannot now complain. *See Brown*, 390 N.E.2d at 1063–64 (citing line of cases holding defendant cannot claim double jeopardy where "the act of a defendant himself aborts a trial." (citation omitted)).[4] As we have noted, the trial court engaged the parties in a discussion

about the propriety of a mistrial, listened to a tape of Pavey's opening statement, and researched case law before ruling on the State's motion. We are persuaded that the trial court "acted responsibly and deliberately, and accorded careful consideration to [Pavey's] interest in having the trial concluded in a single proceeding." *See Arizona*, 434 U.S. at 515, 98 S.Ct. 824. Thus, we conclude that the trial court's mistrial order is supported by a showing of manifest necessity, and Pavey's retrial was not barred by double jeopardy principles.[5]

### Issue Three: Search Warrant

Pavey next contends that the trial court erred when it admitted into evidence his leather jacket, cameras and film taken from his living room, and a blanket taken from his bed. Specifically, he maintains that the police exceeded the scope of the warrant to search his apartment when they seized these items. To protect a citizen's right to be free from unreasonable searches and seizures, our state and federal constitutions require officials to obtain a warrant before conducting searches and seizures. *Green v. State*, 676 N.E.2d 755, 757 (Ind.Ct.App.1996), *trans. denied.* A warrant may not issue unless an affidavit is submitted to a judge or magistrate, describing with particularity the place to be searched and the items to be seized. *Id.* The particularity requirement restricts the scope of the search, authorizing seizure of only those things described in the warrant; a warrant which leaves the executing officer with discretion

---

4. The circumstances of this case are analogous to "invited error." As our supreme court has stated, "[a] party may not invite error, then later argue that the error supports reversal, because error invited by the complaining party is not reversible error." *Kingery v. State*, 659 N.E.2d 490, 494 (Ind.1995).

5. We also note that Pavey has failed to demonstrate how he was prejudiced by his retrial. He makes only the bald assertion that he has "a constitutional right to be tried by the first jury."

is invalid. *Lee v. State*, 715 N.E.2d 1289, 1290 (Ind.Ct.App.1999).

Here, the warrant authorized police to search Pavey's apartment for:

> [i]tems of evidence related to the murder of Patricia C. DeChristopher ... including, but not limited to: Any clothing in the possession of [Pavey] similar in appearance to clothing described by witnesses at HillJack's Bar ... as having been worn by [Pavey], including, but not limited to ... dark bandanas, black pants, black boots, ... black "palm gloves," ... hairs, fibers, soils. ...

Appellant's Exhibit Volume Two, Defendant's Exhibit F. In addition, the search warrant affidavit, which is to be read together with the warrant, *see Foster v. State*, 633 N.E.2d 337, 343 (Ind.Ct.App. 1994), *trans. denied*, depicts one witness' testimony that Pavey "always [wore] dark clothing." While the search warrant did not expressly include Pavey's black leather jacket in the list of items to be seized, that list did include clothing "similar in appearance" to the clothing witnesses described. Pavey maintains that the warrant improperly left the executing officer with discretion regarding what clothing was "similar" to that specifically listed. Our review of the case law on the requisite specificity of search warrants, however, indicates that the warrant was adequately specific. Our supreme court has noted that while the items to be searched for and seized must be described with some specificity, there is no requirement that there be an exact description. *Phillips v. State*, 514 N.E.2d 1073, 1075 (Ind.1987). The court elaborated as follows:

> For example, courts have been liberal in drug cases regarding the specificity with which items to be seized must be named in the warrant since the purpose for search warrants in cases involving contraband is not necessarily to seize the specified property, but to seize property of a specified character. Warrants reciting "a quantity of heroin," "controlled drugs," and "gaming implements and apparatus," have been upheld.

■ *Id.* (citations omitted). Thus, Indiana courts have allowed some degree of "discretion" in an officer's execution of a search warrant.[6]

■ Here, police did not have a list of every item of clothing Pavey was wearing the night of DeChristopher's murder, so they could not have made the warrant any more specific. Given the executing officer's understanding that Pavey wore "biker-type" clothing, and given the witnesses' descriptions of Pavey's clothing that night as consisting of a black or dark-colored shirt, and that he always wore dark clothing, we cannot say that police exceeded the scope of the search warrant when they seized Pavey's black leather jacket.[7] We conclude that the trial court

---

6. We think this interpretation of Indiana law is consistent with the "manifest purpose" of the Fourth Amendment's Warrant Clause, namely, to prevent "general searches." *See Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.*

7. In addition, the jacket's seizure may have been justified under the plain view doctrine, whereby officers may seize an item not specified in a search warrant if the following conditions are met: 1) The officers are conducting a search pursuant to a valid warrant; 2) discovery of the item in question is inadvertent; and 3) the item immediately appeared to be related to the criminal activity in question. *Cutter v. State*, 646 N.E.2d 704, 710 (Ind.Ct. App.1995), *trans. denied*. In *Cutter*, police seized a grocery sack from defendant's apartment because the sack came from a store

did not abuse its discretion when it permitted the State to introduce the jacket into evidence.

■■■ With regard to the photograph of DeChristopher lying half-nude on Pavey's living room floor and the fibers found on the blanket seized from Pavey's bedroom, we need not decide whether they were lawfully seized because any error in their admission into evidence was harmless. An error in the admission of evidence is not prejudicial if the evidence is merely cumulative of other evidence in the record. *Carter v. State,* 683 N.E.2d 631, 632 (Ind.Ct. App.1997), *trans. denied.* Here, Pavey testified that DeChristopher had sex with Liapis in their living room, so the photograph is merely cumulative of that evidence.

■■■ In addition, the improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt which satisfies the reviewing court that there is no substantial likelihood the challenged evidence contributed to the conviction. *Ground v. State,* 702 N.E.2d 728, 732 (Ind. Ct.App.1998). A federal constitutional error is reviewed de novo and must be "harmless beyond a reasonable doubt." *Id.* (citing *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). The court must find that the error did not contribute to the verdict, that is, that the error was unimportant in relation to everything else the jury considered on the issue in question. *Davies v. State,* 730 N.E.2d 726, 735 (Ind.Ct.App.2000), *trans. denied, cert. denied,* 532 U.S. 945, 121 S.Ct. 1410, 149 L.Ed.2d 352 (2001). Here, the verdict was supported by substantial independent evidence of Pavey's guilt, including Liapis' testimony that Pavey murdered DeChristopher, the DNA evidence found on Pavey's leather jacket, and a hair similar to Pavey's found on a pair of jeans recovered from the crime scene. Any error in the admission of the challenged evidence was harmless.

### Issue Four: Prior Bad Acts

Finally, Pavey contends that the trial court abused its discretion when it allowed the State to introduce into evidence the rebuttal testimony of Sandy Farrell and Diana Tucker, who testified that Pavey had previously talked about killing people. He maintains that this evidence of his prior bad acts was prohibited by Indiana Evidence Rule 404(b), as well as Indiana Evidence Rules 403 and 608.

[30–32] The evidentiary rulings of a trial court are afforded great deference and are reversed on appeal only upon a showing of an abuse of discretion. *Herrera v. State,* 710 N.E.2d 931, 935 (Ind.Ct.

---

located in Muncie, "which was near where the body was found." *Id.* Despite the fact that the sack was not listed in the search warrant, this court upheld that seizure under the plain view doctrine. We noted that because the defendant lived in Indianapolis, "the sack was significant as possible evidence that Cutter had recently been present in Muncie. Nothing of record indicates, nor does Cutter contend, that police officers could or should have anticipated the presence of these items in the areas specified in the search warrant." *Id.; see also Lee v. State,* 545 N.E.2d 1085, 1091–92 (Ind.1989) (upholding seizure of garbage bags under plain view doctrine where officer knew that bags "similar in appearance" to those seized were found wrapped around victim's body; holding facts "would lead a reasonable man to believe" that the bags "might be evidence of a crime.") Here, Officer Edward Lewis testified that he was looking to seize "biker-type" clothing which Pavey might have worn the night of DeChristopher's murder. While there was no evidence that the blood stains were readily apparent to Officer Lewis, the facts underlying his seizure of the jacket suggests that he believed the jacket to be "possible evidence" linking Pavey to the crime.

App.1999). Rule 404(b) restrains the admission of prior bad acts into evidence and reads in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence is excluded under Rule 404(b) only when it is introduced to prove the "forbidden inference" of demonstrating the defendant's propensity to commit the charged crime. *Sanders v. State,* 724 N.E.2d 1127, 1130–31 (Ind.Ct.App.2000). When a defendant objects to the admission of evidence on the ground that it violates Rule 404(b), we: (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403. *Hicks v. State,* 690 N.E.2d 215, 221 (Ind. 1997).

 During cross-examination, the State questioned Pavey about a witness' testimony that Pavey had told him that he "should have killed [his] ex-wife instead." Pavey denied having made that statement, and he testified, "[I]t is not my nature to kill someone, and it is not my nature to talk about it." In an effort to rebut Pavey's testimony that it was not his nature to talk about killing someone, the State offered Farrell's testimony that when she and Pavey were working together on a casino boat, Pavey "would point out to [her] and tell [her] that he could kill certain people that he saw on the boat." In addition, Tucker testified that Pavey told her that he could "slit [her] throat and watch [her] bleed."

Pavey objected to both Farrell's and Tucker's testimony on the basis that it was prohibited by Rules 404(b) and 403. Under the first prong of *Hicks,* we determine that the testimony was relevant to an issue other than Pavey's propensity to commit the charged crime, namely, to impeach Pavey. Under the second prong, given that DeChristopher's throat was cut, the testimony is clearly prejudicial to Pavey. But we cannot say that the challenged testimony contains insufficient probative value with respect to impeaching Pavey such that it is outweighed by that prejudice, particularly in light of the evidence that Pavey had told his cell mate that he should have killed his ex-wife "instead." Moreover, because the challenged testimony was introduced to contradict Pavey's own testimony on the subject, it was not prohibited by 404(b). *See* ROBERT LOWELL MILLER, JR., 12 INDIANA PRACTICE, INDIANA EVIDENCE § 404.233 (2d ed.1995) (noting split among federal courts regarding applicability of 404(b) to impeachment evidence; noting "Rule 404(b) should not prohibit extrinsic act evidence offered for impeachment purposes[.]").

Rule 608 prohibits the use of specific instances of a witness' conduct for the purpose of attacking or supporting that witness' credibility. However, an exception to the inadmissibility of such evidence is described by Judge Miller:

> Generally, if a party touches incompletely on a subject in direct examination, [ ] leaving the trier of fact with a false or misleading impression of the facts related, the door may be opened to the cross examiner to explore the subject fully by bringing out otherwise inadmissible material.[ ] This doctrine is equally applicable when a party ... leaves the trier of fact with a false or misleading impression of the character of the party or his witnesses. If other evidence or testimo-

ny sufficiently corrects the misimpression, however, the trial court may decide to close the door and enforce traditional limitations on cross-examination. [ ] In any event, the responding evidence must somehow relate to the evidence by which the door is claimed to have been opened.[ ]

\* \* \*

For example, ... [i]f a criminal defendant's psychiatric or lay evidence portrays him as peaceful, the door may be opened for the prosecution to reveal prior acts or threats of violence.[ ]

MILLER, JR., 13 INDIANA PRACTICE, INDIANA EVIDENCE § 608.207.

 Here, the State maintains that Pavey "opened the door" to Farrell's and Tucker's testimony when he gave the jury the impression that it was not his "nature" to talk about killing people. We must agree. As we stated in *Fahler v. Freeman*, 143 Ind.App. 493, 241 N.E.2d 394, 396 (1968), "[w]here evidence on a certain issue is introduced by one party, and it appears likely that the other party will be prejudiced unless he is permitted to introduce contradictory or explanatory evidence, such evidence should be permitted." Pavey was not questioned about his "nature" with regard to talking about killing people; instead, he offered this statement, unsolicited, during cross-examination. We think that this is a classic case of a defendant "opening the door" to an issue, and we do not see any undue prejudice in the rebuttal testimony. Indeed, Pavey's counsel cross-examined both Farrell and Tucker regarding the alleged statements, and the trial court instructed the jury that they could consider the challenged testimony for impeachment purposes only. We conclude that the trial court did not abuse its discretion when it permitted this testimony.[8]

Affirmed.

BAKER, J., and MATTINGLY–MAY, J., concur.

---

8. Pavey also contends that the testimony was prohibited by Evidence Rule 613(b), which provides that extrinsic evidence of a witness' prior inconsistent statement is inadmissible unless that witness is permitted to explain or deny the inconsistency. Pavey maintains that the trial court improperly denied him the opportunity to explain or deny the alleged statements in accordance with the rule. However, Rule 613(b) "does not apply to statements of a party-opponent as defined in Rule 801(d)(2)." Rule 801(d)(2) defines a statement by a party-opponent in relevant part as a statement offered against a party that is "the party's own statement[.]" Rule 613(b), then, does not apply to Farrell's and Tucker's testimony, and the trial court did not err when it denied Pavey's request to offer surrebuttal testimony in response to that testimony.