# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 11 2015, 8:29 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

Ian James Dutton,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 11, 2015

Court of Appeals Case No.
42A01-1407-CR-325

Appeal from the Knox Circuit Court.
The Honorable Sherry B. Gregg
Gilmore, Judge.
Cause No. 42C01-0908-FB-64

**Garrard, Senior Judge**

[1] Ian James Dutton appeals his convictions by jury of dealing in a Schedule II controlled substance (OxyContin), a Class B felony,[1] and maintaining a common nuisance, a Class D felony.[2] We affirm.

## Issues

[2] Dutton raises three issues, which we restate as:

    I.     Whether there is sufficient evidence to sustain Dutton's convictions.

    II.     Whether the trial court committed fundamental error in admitting evidence.

    III.     Whether the prosecutor's comments to the jury during closing arguments were misconduct that amounted to fundamental error.

## Facts and Procedural History

[3] During the period of time relevant to this case, Dutton lived with Laura Fleenor in Vincennes, Indiana. Fleenor had prescriptions for OxyContin and Adipex, which are medicines that contain controlled substances. Dutton told Fleenor that he could make money for them by selling her pills. She agreed to his plan.

[4] Meanwhile, Casey Luttrell, who was an informant for the Indiana State Police, moved to Vincennes. He met Dutton through a mutual acquaintance. After

---

[1] Ind. Code § 35-48-4-2(a)(1) (2001).

[2] Ind. Code § 35-48-4-13(b)(2) (2001).

talking with Dutton, Luttrell told Trooper Chad Woodburn that he could buy controlled substances from Dutton and Fleenor.

[5] On May 20, 2009, Luttrell set up a buy with Dutton via an Xbox online communication, in Trooper Woodburn's presence. Prior to the buy, Trooper Woodburn interviewed Luttrell and searched him for weapons and contraband. Finding none, Trooper Woodburn gave Luttrell $125 in buy money and an audio recording device. The device was activated and secured so that Luttrell could not turn it off. Next, Trooper Woodburn drove Luttrell to Dutton and Fleenor's house in an unmarked car and dropped him off.

[6] Dutton answered the door and let Luttrell enter. Luttrell gave the buy money to Dutton, and Dutton gave pills to Luttrell after obtaining them from Fleenor. Once Luttrell returned to Trooper Woodburn's car, they drove to a prearranged debriefing location, where Luttrell gave the officer pills that were later identified as OxyContin and Adipex. During the debriefing, Luttrell told Trooper Woodburn that Dutton said he was not supposed to smoke marijuana because he was on house arrest.

[7] On May 22, 2009, and June 2, 2009, Luttrell, working with Trooper Woodburn, purchased controlled substances from Dutton and Fleenor, following the same protocols that were used during the May 20, 2009 buy. On both occasions, Luttrell made the arrangements with Dutton in advance and went to Dutton and Fleenor's house. Once there, Luttrell handed Dutton the buy money, and Fleenor gave Luttrell the pills.

[8]     On June 19, 2009, Luttrell advised State Trooper Robert Hornbrook that he could purchase more OxyContin from Dutton. Luttrell called Dutton to make arrangements. Trooper Hornbrook overheard and recorded the call.

[9]     After Luttrell and Dutton agreed upon the terms of the sale, Trooper Hornbrook searched Luttrell for contraband and money. Finding no contraband, Trooper Hornbrook gave Luttrell $40.00 in buy money and an audio recording device. Trooper Hornbrook then drove Luttrell to Dutton and Fleenor's home in an unmarked car. Trooper Hornbrook instructed Luttrell to go in, exchange the buy money for controlled substances, and return immediately to Trooper Hornbrook's vehicle without meeting anyone else.

[10]    Once inside the house, Luttrell gave the money to Dutton, who turned it over to Fleenor. In exchange, Fleenor gave Luttrell four pills that were later identified as OxyContin. During the transaction, Luttrell asked Dutton about two individuals named "Pooter" and "Big Folk." Luttrell had seen those individuals participate in transactions with Dutton involving controlled substances. Luttrell left the house and returned directly to Trooper Hornbrook's car. Luttrell gave Trooper Hornbrook the OxyContin during a subsequent debriefing session.

[11]    The State charged Dutton with four counts of dealing in a Schedule II controlled substance, all Class B felonies, two counts of dealing in a Schedule IV controlled substance, both Class C felonies, and one count of maintaining a common nuisance, a Class D felony.

During trial, Dutton did not object to evidence that he was on home detention during at least one of the transactions and had used marijuana. Dutton further failed to object to evidence that he had engaged in transactions with "Pooter" and "Big Folk" involving controlled substances. Instead, well after that evidence was admitted and the jury was excused from the courtroom for the evening, Dutton moved for a mistrial. He alleged that the evidence was unduly prejudicial. The trial court denied Dutton's motion.

The jury determined that Dutton was guilty of one count of dealing in a Schedule II controlled substance and of maintaining a common nuisance. The jury failed to return verdicts on the other five charges. Dutton filed a motion to correct error, claiming that the prosecutor engaged in misconduct during closing argument. The trial court denied the motion and sentenced Dutton according to the jury's verdict. This appeal followed.

# Discussion and Decision

## I. Sufficiency of the Evidence

Dutton argues that there is insufficient evidence to support his convictions for dealing in a schedule II controlled substance and maintaining a common nuisance. In considering challenges to the sufficiency of the evidence, we neither reweigh the evidence nor judge witness credibility. *Kiplinger v. State*, 922 N.E.2d 1261, 1266 (Ind. 2010). Instead, we consider only the evidence supporting the judgment and any reasonable inferences drawn from that evidence. *Tin Thang v. State*, 10 N.E.3d 1256, 1258 (Ind. 2014). We affirm a

conviction unless no reasonable trier of fact could find every element proved beyond a reasonable doubt. *Blount v. State*, 22 N.E.3d 559, 565 (Ind. 2014).

### *A. Dealing in a Schedule II Controlled Substance*

Dutton claims that Fleenor, not him, sold controlled substances to Luttrell. In order to convict Dutton for dealing in a schedule II controlled substance as charged, the State was required to prove beyond a reasonable doubt: (1) on June 19, 2009 (2) Dutton knowingly or intentionally (3) delivered (4) OxyContin, a Schedule II controlled substance. Ind. Code § 35-48-4-2; Appellant's App. p. 37. "Delivery" is defined as:

> (1) an actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship; or
>
> (2) the organizing or supervising of an activity described in subdivision (1).

Ind. Code § 35-48-1-11 (1990).

Dutton told Fleenor he could make money by selling her OxyContin and Adipex pills. Fleenor agreed to Dutton's plan. On June 19, 2009, Luttrell notified Trooper Hornbrook that he could arrange a deal with Dutton and Fleenor to purchase OxyContin. Luttrell called Dutton, with Trooper Hornbrook listening to the call, and made arrangements to purchase four OxyContin pills.

Next, Trooper Hornbrook searched Luttrell for guns, contraband, or currency other than the buy money he planned to give Luttrell. Finding none, he gave

Luttrell forty dollars and a concealed recording device. Next, Trooper Hornbrook drove Luttrell to Dutton and Fleenor's house. He instructed Luttrell to go in, exchange the buy money for controlled substances, and return immediately to his vehicle without meeting anyone else.

[18] Luttrell went inside the house, where Dutton and Fleenor were present. Luttrell gave the buy money to Dutton in Fleenor's presence, and Fleenor gave four pills to Luttrell in Dutton's presence. When Luttrell returned to Trooper Hornbrook's car, he gave Hornbrook the four pills, which were later identified as OxyContin.

[19] A jury could have reasonably determined from this evidence that Dutton constructively transferred the OxyContin to Luttrell or, in the alternative, organized and supervised the delivery of the OxyContin to Luttrell. *See Laird v. State*, 483 N.E.2d 68, 70 (Ind. 1985) (defendant constructively delivered controlled substances by having his girlfriend carry a bag of pills to another person). Dutton's arguments to the contrary are requests to reweigh the evidence, which our standard of review forbids.

[20] The parties dispute whether Dutton's conviction can be upheld under a theory of accomplice liability. It is unnecessary for us to address this issue because the evidence establishes that he delivered the OxyContin to Luttrell.

### B. Maintaining a Common Nuisance

[21] In order to obtain a conviction for maintaining a common nuisance as charged, the State was required to prove beyond a reasonable doubt: (1) from May 20,

2009 through June 19, 2009 (2) Dutton (3) knowingly or intentionally (4) maintained a place (5) for unlawfully delivering (6) controlled substances. Ind. Code § 35-48-4-13; Appellant's App. p. 38.

[22] Dutton argues that this conviction must be reversed because there is insufficient evidence that he delivered controlled substances to Luttrell or anyone else. We have determined that there is sufficient evidence to sustain his conviction for dealing in controlled substances by delivering pills to Luttrell. As a result, Dutton's argument fails, and there is sufficient evidence to sustain his conviction for maintaining a common nuisance. *See Vaughn v. State*, 13 N.E.3d 873, 889 (Ind. Ct. App. 2014) (sufficient evidence supported conviction for maintaining a common nuisance where defendant delivered cocaine to confidential informant from his apartment), *trans. denied*.

## II. Admission of Evidence and Fundamental Error

[23] Dutton argues that the trial court erred by admitting testimony that he: (1) had smoked marijuana in the past; (2) was on house arrest when one of the transactions with Luttrell occurred; and (3) had engaged in other controlled substance transactions with individuals known to Luttrell as "Pooter" and "Big Folk."

[24] Dutton did not present contemporaneous objections to any of this evidence. Therefore, his claims are waived for appellate review. *See Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (evidentiary claim waived when appellant did not object to evidence but later made a statement outside the presence of the jury).

Dutton argues that his motion for mistrial, which he raised after the evidence had been presented to the jury, was sufficient to preserve this claim. He cites *Pavey v. State*, 764 N.E.2d 692 (Ind. Ct. App. 2002), *trans. denied*, in support of his argument. In that case, the trial court granted the State's motion for mistrial after opening statements. After a retrial was held, the defendant appealed, challenging the trial court's grant of a mistrial. A panel of this Court concluded that the State's motion for a mistrial was a timely challenge to statements in the defendant's opening statement, despite the State's failure to present a contemporaneous objection. *Id.* at 699. The Court noted that because the defendant was the appealing party, the question of whether the State had preserved error for appellate review was not at issue. *Id.*

By contrast, in this case, Dutton claims that the State presented unduly prejudicial evidence. He, not the State, bore the burden of presenting timely objections to preserve his claims for appellate review. *Pavey* is inapplicable here, and Dutton's failure to object resulted in waiver despite his belated motion for mistrial. *See Brown*, 929 N.E.2d at 207 (stating a party may not "resurrect an objection after the evidence has been admitted").

Dutton argues that this Court may review his waived evidentiary claims because the admission of the evidence resulted in fundamental error. Fundamental error is an extremely narrow exception to the rule that failure to object at trial results in waiver of an issue on appeal. *Knapp v. State*, 9 N.E.3d 1274, 1281 (Ind. 2014), *cert. denied*, 135 S. Ct. 978, 190 L. Ed. 2d 862 (2015). It

applies only in egregious circumstances, where an error is so blatant that the trial court should have taken action sua sponte. *Id.*

[28] To establish fundamental error, an appellant must demonstrate that the error made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm. *Id.*

[29] Dutton says that admission of evidence about his past marijuana use, being on home detention, and engaging in controlled substances transactions with persons other than Luttrell violated Indiana Evidence Rule 404(b). That rule provides, in relevant part: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *Id.*

[30] It appears that the evidence Dutton challenges is indicative of prior crimes, wrongs, or acts. Even if this evidence was erroneously admitted, we cannot conclude that its admission amounts to fundamental error. The witnesses' references to Dutton's past marijuana use, being on home detention, and engaging in other illegal transactions were limited in nature and made in passing. Furthermore, as noted above, the evidence supporting Dutton's convictions is substantial. With respect to Dutton being on home detention, Dutton submitted to the jury a copy of the State's probable cause affidavit, which referred to Dutton as being on home detention. Thus, the jury heard additional evidence from Dutton regarding his home detention status.

Finally, despite hearing evidence of other crimes, wrongs, or acts, the jury did not return verdicts on five of the seven charges against Dutton. This outcome indicates that the challenged evidence did not have a substantial impact on the jury's decision and did not inflame the jury against Dutton. We cannot conclude that the admission of the evidence of other alleged crimes, wrongs or acts made a fair trial impossible or constituted a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm. *See Vermillion v. State*, 978 N.E.2d 459, 464 (Ind. Ct. App. 2012) (no fundamental error from the admission of evidence of other crimes where the jury heard "unequivocal evidence" supporting the convictions). Dutton has failed to establish fundamental error.

## III. Closing Arguments and Fundamental Error

Dutton claims that during closing arguments, the State presented arguments that amounted to misconduct. He concedes that he did not object at trial to the prosecutor's comments. A defendant waives a claim of prosecutorial misconduct for appellate review by failing to object in the trial court. *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014). When a claim of prosecutorial misconduct is waived but the defendant intends to present it on appeal despite waiver, the defendant must establish not only the grounds for prosecutorial misconduct but also that the misconduct constituted fundamental error. *Id.* at 667-68.

[33]    In reviewing a claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected. *Booher v. State*, 773 N.E.2d 814, 817 (Ind. 2002). The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id.*

[34]    As noted above, fundamental error is an extremely narrow exception to the waiver rule. *Ryan*, 9 N.E.3d at 668. Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide second bites at the apple for defense counsel who ignorantly, carelessly, or strategically fails to preserve an error. *Id.*

[35]    To establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred by not raising the issue *sua sponte* because alleged errors (a) constitute clearly blatant violations of basic and elementary principles of due process and (b) present an undeniable and substantial potential for harm. *Id.* In evaluating the issue of fundamental error, our task in this case is to look at the alleged prosecutorial misconduct in the context of all that happened and all relevant information given to the jury—including evidence admitted at trial, closing argument, and jury instructions—to determine whether the alleged misconduct had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible. *Id.*

[36] Dutton points to sixteen separate comments by the prosecutor that he claims amount to prosecutorial misconduct and fundamental error. Appellant's Br. pp. 22-24. The comments include discussion on the credibility of the State's witnesses that could amount to vouching for their testimony. Tr. p. 282 (telling the jury "you can be certain [the evidence] was properly handled by the Indiana State Police and properly presented by the analysts"). There were also remarks that could be construed as disparaging defense counsel's arguments and burnishing his own credibility. Tr. pp. 317-18 (characterizing defense counsel's arguments as "childish" and stating that, as a Marine, he was "a little tougher" than defense counsel). Finally, among other comments, the prosecutor accused Dutton of "pump[ing] poison into the streets of our community" and stated that a not guilty verdict would be "a stench in the nostrils of justice," statements that could be interpreted as encouraging the jury to convict for reasons other than Dutton's guilt. Tr. p. 327.

[37] Even if the sixteen comments identified by Dutton, taken individually or cumulatively, amounted to misconduct, we cannot conclude that he was placed in great peril or that the comments amounted to clearly blatant violations of basic and elementary principles of due process. The evidence against Dutton was very strong. Testimony by Trooper Hornbrook, Luttrell, and Fleenor established that Dutton organized an OxyContin transaction with Luttrell and took the buy money from Luttrell, after which Fleenor gave Luttrell the agreed-upon amount of pills in Dutton's presence. There is no dispute that the pills in question were OxyContin, a controlled substance.

[38]    In addition, the jury's verdict was much more favorable to Dutton than to the State because the jury did not return a verdict on five of the seven charges against him.  The verdict demonstrates that the jury was not unfairly biased in favor of the State nor unfairly inflamed against Dutton by the prosecutor's remarks.  *See Phillips v. State*, 22 N.E.3d 749, 761 (Ind. Ct. App. 2014) (prosecutor's remarks did not amount to fundamental error because the evidence against defendant was strong, so the probable persuasive effect of the remarks was minimal), *trans. denied*; *Neville v. State*, 976 N.E.2d 1252, 1265 (Ind. Ct. App. 2012) (prosecutor's remarks did not place defendant in grave peril or amount to fundamental error because the evidence against the defendant was strong), *trans. denied*.

[39]    For the reasons stated above, we affirm the judgment of the trial court.

[40]    Affirmed–Garrard, Senior Judge

Bailey, J., and Mathias, J., concur.