# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 16 2019, 5:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika P. Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James E. Ross, Jr.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

January 16, 2019

Court of Appeals Case No.
18A-CR-1262

Appeal from the Elkhart Circuit Court

The Honorable Michael A. Christofeno, Judge

Trial Court Cause No.
20C01-1610-F1-8

**May, Judge.**

[1] James E. Ross, Jr., appeals his conviction of Level 1 felony attempted murder.[1] He presents multiple issues for our review, which we consolidate and restate as:

> 1. Whether the trial court abused its discretion when it denied Ross' motion for mistrial based on the "drumbeat" repetition of testimony from three witnesses who heard the victim state Ross was the shooter; and

> 2. Whether the trial court abused its discretion when it admitted into evidence deleted text messages found on Ross' phone.

We affirm.

## Facts and Procedural History[2]

[2] On October 17, 2016, Maurice Graves visited Maria Villegas' house, which was equipped with a video surveillance system. While there, he received a phone call from Ross. Ross stated, "Hey, I heard you been trying to kill me." (Tr. Vol. III at 221.) Graves testified he told Ross, "there's been a couple time that I seen you and you didn't see me, and I could have easily had you." (*Id.* at 223-4) (errors in original). Ross responded, "All right. That's all I wanted to know," (*id.* at 224), and he hung up.

---

[1] Ind. Code § 35-42-1-1 (2014); Ind. Code § 35-41-5-1 (2014) (attempt)

[2] We held oral argument in this case on December 6, 2018, in the Indiana Court of Appeals Courtroom at the Indiana Statehouse. We thank counsel for their able presentations.

[3] Later that evening, Antonio Williams arrived at Villegas' home looking for Graves. Williams wanted to sell marijuana to Graves and displayed the marijuana and a gun to both Graves and Villegas. Williams and Graves left Villegas' home with Charles Jackson[3] to go to a gas station, where they purchased cigarellos. Williams and Graves were both armed. As the men were walking, Jackson noticed Williams was texting on his phone. After the men made their purchases, they started to walk back to Villegas' house. On the way, Williams said something about "unexpected things happening." (*Id*. at 243.) Based on Williams' comment, Graves drew his gun. When the men arrived at Villegas' back yard, two men, later identified as Rasheed Davis and Ross, came from behind the shed in the backyard and started shooting at Graves. Graves fired his weapon and was running away when he realized he had been shot.

[4] Corporal Jason Gruber responded to a call of an injured person. When he arrived, he began applying pressure to Graves' wound. While Corporal Gruber was rendering aid, Graves said to him, "if you wanna know who to look for, it's James." (*Id*. at 11.) Sergeant Daniel Mayer then arrived at the scene and started assisting Graves, who was "writhing in pain." (*Id*. at 26.) Afraid Graves might not survive his injuries, Sergeant Mayer asked Graves who shot him, to which Graves replied, "James." (*Id*. at 28.) An ambulance arrived and transported Graves to the hospital. When Ross was taken out of the

---

[3] Jackson had arrived at Villegas' house earlier in the evening.

ambulance, Officer Brandon Stevens heard Graves scream twice that he had been shot by "James Ross." (*Id.* at 40.)

[5] Graves was shot twice in the buttocks and twice in his right upper arm. The police viewed the footage from the surveillance camera at Villegas' home and saw Ross shooting at Graves. In addition, the police found slugs and a jacket in the area where Graves had been shot and a firearm outside Villegas' fence. Police interviewed Graves at the hospital, and he again identified Ross as the shooter. He also picked Ross out of a lineup provided by police. Police then arrested Ross, who at the time was carrying an iPhone and a gun.

[6] Police requested a warrant to search Ross' iPhone for further evidence of the crime. The affidavit in support of the search warrant referenced the call between Ross and Graves prior to the shooting. In the deleted messages on the iPhone, police found a text message conversation between Ross and an individual later identified as Williams that began at 9:55 p.m. and ended at 10:30 p.m. The text messages indicated Graves' location at the time, including information about when Jackson, Williams, and Graves left the gas station to walk to Villegas' home, and reported that Graves was armed. Police then requested a second search warrant to obtain the cell phone records for the iPhone. On October 26, 2016, the State charged Ross with Level 1 felony attempted murder.

[7] On May 2, 2017, Ross filed a motion to suppress all evidence from the cell phone. He argued the first warrant to search the phone was overbroad, lacked

particularity, and did not indicate a nexus between the iPhone and the crime. The trial court held a hearing on the matter on August 2, 2017. After the hearing, the trial court directed the parties to file supplemental briefs on the matter. On September 19, 2017, the trial court denied Ross' motion to suppress.

[8] Ross' trial began on February 19, 2018. At the trial, Corporal Gruber, Sergeant Mayer, and Officer Stevens testified that Graves identified Ross as the man who shot him. Ross objected as each of them testified and moved for mistrial after the third officer testified, based on the drumbeat fashion of the officers' testimony. The trial court denied Ross' motion for mistrial, and the proceedings continued. Graves testified to the events of the evening, including his conversations with the officers. The State entered into evidence, over Ross' objection, the text messages between Williams and Ross. After a six-day trial, the jury returned a guilty verdict against Ross. The trial court convicted Ross and later sentenced him to forty years.

# Discussion and Decision

### *Denial of Motion for Mistrial*

[9] Whether to grant a mistrial is a decision left to the sound discretion of the trial court. *Pavey v. State*, 764 N.E.2d 692, 698 (Ind. Ct. App. 2002), *trans. denied*. "The trial court's decision is afforded great deference on appeal because the trial court is in the best position to gauge the surrounding circumstances of the event and its impact on the jury." *Id*. "The declaration of a mistrial is an extreme

action which is warranted only when no other recourse could remedy the perilous situation." *Id.*

[10] During Ross' trial, three different officers testified Graves identified Ross as the shooter prior to receiving treatment at the hospital for his injuries. Ross claims this drumbeat repetition of Graves identification of him "improperly bolstered the credibility of Maurice Graves and substantially prejudiced [Ross]." (Br. of Appellant at 30.) Our Indiana Supreme Court confronted a similar issue in *Modesitt v. State*, 578 N.E.2d 649 (Ind. 1991).

[11] In *Modesitt*, three witnesses testified regarding the victim's out of court statements about the incident. The victim then testified. Our Indiana Supreme Court overturned Modesitt's convictions and ordered a new trial because "statements could not be introduced to bolster the testimony of what might otherwise be regarded as a weak witness. Numerous witnesses could not be used to testify to the same statement given by a particular witness, thereby creating the prohibited drumbeat of repetition." *Id.* at 653.

[12] Ross argues the same drumbeat repetition resulted in him receiving an unfair trial. Ross outlines the three officers' testimony and his objections thereto. First, Corporal Gruber testified that while he was tending Graves' wounds, Graves said, "if you wanna know who to look for it's James." (Tr. Vol. III at 13.) Similarly, Officer Mayer asked Graves who shot him, and Graves told Officer Mayer the shooter was "James." (*Id*. at 28.) Finally, Officer Steven testified he heard Graves scream at the hospital that he had been shot by

"James Ross." (*Id*. at 40.) After the officers' testimony, Graves testified regarding the entire incident, including his statements to the officers, and then he again identified Ross in court as the shooter.

[13] Our Indiana Supreme Court adopted Federal Evidence Rule 801(d)(1) as a test governing the admissibility of prior statements as substantive evidence in *Modisett*:

> [W]e hold that, from this point forward, a prior statement is admissible as substantive evidence only if the declarant testifies at trial and is subject to cross examination concerning the statement, and the statement is (a) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (b) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (c) one of identification of a person made after perceiving the person.

*Modisett,* 578 N.E.2d at 653-4. Here, Graves' prior statements identifying Ross as the shooter were admissible because Graves testified at trial, was subject to cross-examination, and the statement was "one of identification of a person made after perceiving the person." *Id*. at 654. Additionally, the relevant statements were brief and consistent with Graves' testimony. Therefore, the trial court did not abuse its discretion when it denied Ross' request for mistrial. *See*, *e.g.*, *McGrew v. State*, 673 NE.2d 787, 796 (Ind. Ct. App. 1996) (unlike *Modisett*, where the "drumbeat" repetition consisted of lengthy detailed testimony of the abuse allegation, the statements in McGrew were "brief and

consistent" with the victim's later statements, and thus the admission of the testimony "is not cause for reversal"), *reh'g denied*, relevant portions summarily affirmed in *McGrew v. State*, 682 N.E.2d 1289, 1292 (Ind. 1997).

### *Admission of Evidence*

[14] We review rulings regarding the admission of evidence for an abuse of discretion, which occurs "when a decision is clearly against the logic and effect of the facts and circumstances before the court." *Johnson v. State*, 992 N.E.2d 955, 957 (Ind. Ct. App. 2013), *trans. denied*. We do not reweigh the evidence or assess the credibility of witnesses. *Id*. Instead, we "consider conflicting evidence in a light most favorable to the trial court's ruling." *Id*.

[15] Ross argues the trial court abused its discretion when it admitted deleted text messages found on his iPhone by police because those text messages were seized in violation of his rights under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. We need not address those arguments, however, because any error in the admission of the deleted text messages was harmless.

[16] An error in admitting evidence does not require reversal unless it affects the substantial rights of a party. *Stewart v. State*, 754 N.E.2d 492, 496 (Ind. 2001). "The improper admission of evidence is harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Barker v. State*, 695 N.E.2d 925, 931

(Ind. 1998), *reh'g denied*. The erroneous admission of evidence may also be harmless if that evidence is cumulative of other evidence admitted. *Donaldson v. Indianapolis Pub. Transp. Corp.*, 632 N.E.2d 1167, 1172 (Ind. Ct. App. 1994).

[17] Here, the State presented surveillance video of Ross shooting Graves, forensic evidence that the bullets in and around Graves matched the gun Ross was carrying gun when arrested, and Graves' testimony outlining the call between Graves and Ross and the ensuing events culminating in Graves' shooting. Based on the substantial independent evidence presented, we conclude any alleged error in the admission of the deleted text messages from Ross' iPhone was harmless. *See Hunter v. State*, 72 N.E.3d 928, 932 (Ind. Ct. App. 2017) ("improper admission of evidence is harmless error when the erroneously admitted evidence is merely cumulative of other evidence before the trier of fact"), *trans. denied*.

# Conclusion

[18] The trial court did not abuse its discretion when it denied Ross' request for mistrial. Additionally, any error in the admission of the deleted text messages from Ross' phone was harmless because the deleted text messages were merely cumulative of other substantial evidence of Ross' guilt that was before the jury. Accordingly, we affirm.

[19] Affirmed.

Baker, J., and Robb, J., concur.