ATTORNEY FOR APPELLANT
Marce Gonzalez, Jr.
Dyer, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana



FILED

Jun 17 2015, 11:27 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 45S00-1312-LW-512

ROBERT LEWIS III,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Lake County Superior Court, No. 45G03-1104-MR-3
The Honorable Diane Ross Boswell, Judge

**June 17, 2015**

**Massa, Justice.**

Robert Lewis III brings this direct appeal after a jury convicted him of the murder of Jennifer Kocsis, murder in the perpetration of criminal deviate conduct, criminal deviate conduct, and resisting law enforcement. Lewis challenges various aspects of the proceedings below, including the admission of certain evidence, the adequacy of the jury instructions, and his sentence of life without the possibility of parole. We find no reversible error with respect to the convictions and affirm, but we reverse the sentencing determination and remand to the trial court for a

sentencing order containing a personal statement from the judge that life without possibility of parole is the appropriate sentence for Lewis, consistent with Harrison v. State, 644 N.E.2d 1243 (Ind. 1995) and Pittman v. State, 885 N.E.2d 1246 (Ind. 2008).

**Facts and Procedural History**

On April Fool's Day, Lewis invited his friend, Rodney Taylor, to Pepe's Restaurant and Bar in Griffith, Indiana. Taylor picked up Lewis at his mother's home in Gary (Lewis's residence at the time) and drove them to Pepe's to drink and socialize. When Taylor wanted to leave before Lewis, Lewis said he would "find a way home," and Taylor left. Tr. at 235.

Lewis stayed at the bar, where he repeatedly asked Rebeca Hixon, a fellow patron, if she wanted to go home and "f**k." Tr. at 235–36. When Hixon declined, Lewis became angry, pulled her hair away from her face, and demanded that she look at him. Hixon asked Tracey Harris, a waitress at Pepe's, to distract Lewis so she could leave. Hixon got away safely, at which point Lewis began pursuing Harris. Lewis repeatedly asked Harris if she would take him home so they could "f**k." Tr. at 306–08. At one point he pulled Harris by her pant-leg in an attempt to bring her closer to him. Eventually, Lewis turned his attention to Jennifer Kocsis, a regular at Pepe's. Lewis persuaded Kocsis to give him a ride home by lying about his address, indicating it was close to where Kocsis lived in Griffith, and they left together shortly after 2:00 a.m.

At 2:37 a.m., Lewis called his girlfriend Chakole Spurlock and asked her to pick him up near his mother's home in Gary. When she arrived, Lewis was carrying and wearing clothing covered with wet, fresh blood. As they drove away, Lewis separately threw each of his bloody shoes out the window. At Lewis's request, he and Spurlock went to a hotel in Merrillville, checking in around 4:00 a.m. Over the next few hours, Lewis made multiple sexual advances toward Spurlock, which she rejected. They then left the motel together, retrieved the discarded shoes, and in an alley near Spurlock's home set fire to the bloody clothing, the shoes, and Kocsis's car keys.

Later that morning, Kocsis was discovered brutally beaten to death in the parking lot of an abandoned school in Gary. The official cause of death was "multiple blunt-force injuries and

2

manual strangulation." Tr. at 766. Kocsis also suffered cranial hemorrhages, a broken nose, jaw, and hyoid bone, multiple lacerations to the face and back of the head, injuries to the neck, throat, and larynx, and several contusions and scrapes to the hands, knees, and collarbone. There was also a shoe print on her arm.

Kocsis's skirt and underpants were around her knees, and there was a hand-shaped bruise or blood stain on her buttocks. Police found DNA not belonging to Kocsis on the outside of her anus. A second swab, which was inserted through her anus (but without first cleaning the outside) found the same DNA. While initial presumptive testing was positive for semen, the confirmatory test was inconclusive, and thus the DNA may have come from semen, skin, sweat, blood, or saliva. Kocsis's anus did not appear to have been penetrated, and there was no evidence of injury to the anus. Police also found Kocsis's car about four blocks away. Part of one of her teeth was embedded in the exterior of her car, and there was blood on the steering wheel.

Through security camera footage from Pepe's and witness statements, police identified Lewis as a suspect in Kocsis's murder. While police were in the neighborhood of Lewis's mother's home, they saw Lewis quickly exit the home, jump in his car, and drive off, escalating into a high-speed police chase which at times exceeded 90 miles per hour. Lewis eventually stopped himself and was peaceably taken into custody.

Lewis was charged with murder, felony murder, robbery, criminal deviate conduct, and resisting law enforcement. DNA testing confirmed Lewis's blood was on the steering wheel of Kocsis's car. Although the DNA in and around Kocsis's anus could not be positively matched to Lewis, multiple laboratory procedures were unable to exclude him, and only one out of approximately 423,000 African Americans would fit the genetic profiles found. The shoe print on Kocsis's arm matched the tread on the bottom of Lewis's burned sneakers, recovered from the alley near Spurlock's home.

After a two-week trial, a jury convicted Lewis of all charges except robbery. The jury was subsequently unable to agree on a sentence; as a result, the trial court set a sentencing hearing,[1] where the following exchange occurred with respect to the Court's sentencing options:

> [Defense counsel]: I actually have, among other things, a list of a number of cases where the Judge ended up imposing a term of years.
>
> THE COURT: Uh-huh.
>
> [Defense counsel]: Instead of imposing either the death sentence or life without the possibility of parole, even though the aggravating factors were found. Wilkes, as I said, clearly makes it clear that the Court consider these things.
> Now, why if the—why if the Court found those aggravating factors would they turn around and say, well, once the Judge made those factors, the Judge had no choice.
>
> THE COURT: Well, no, no, no. It's clear that if they proved their aggravator and we find mitigators that outweigh the aggravator.
>
> [Defense counsel]: They you can—
>
> THE COURT: Then I can do a term—I can do a term of years.
>
> [Prosecutor]: Correct, correct, that's a correct statement.
>
> THE COURT: But we have one aggravator here and one mitigator and that mitigator does not outweigh.
>
> [Defense counsel]: As I under—as your honor has intimated. But the fact of the matter is that your Honor has taken a position that even if you find those two things to be true, you—if you find—you must. And my argument—and this is obviously of great significance—is that no, you are not required to. You clearly have the same option as the jury.
>
> THE COURT: Okay. Mr. Page, we're going to proceed today and I'm going to interpret the statute the way I read it because I don't see where it says—it

---

[1] Indiana Code section 35-50-2-9(f) (2014) states: "If a jury is unable to agree on a sentence recommendation after reasonable deliberations, the court shall discharge the jury and proceed as if the hearing had been to the court alone."

4

|  |  |
|---|---|
|  | clearly says the Court—jury has three options, but when it lists what—when you revert to the case as if it were tried to the Court, it does not list—it does not say that the Court could find a term of years or life without parole. |
| [Defense counsel]: | So you'll be making it clear on the record that if you're imposing life, you're doing it because you believe the statute requires you to? |
| THE COURT: | Well, I believe that they—I believe that they proved their aggravator— |
| [Defense counsel]: | Right. |
| THE COURT: | (Continuing)—that it was an intentional killing, and they proved it beyond a reasonable doubt, and that the one [mitigator] that has been suggested, and I don't have anymore to offer that you didn't bring up, that that one does not outweigh the aggravator. |
| [Defense counsel]: | And your Honor is then taking the position that because you find those things to be true, you must impose life. |
| THE COURT: | Yes, that's what the—that's how I read the statute, that I must impose the term of life without parole. |

Sentencing Tr. at 43–46. The judge then sentenced Lewis to life imprisonment without the possibility of parole, and an additional term of three years for resisting law enforcement.

Lewis now appeals, making a number of challenges to the trial proceedings, which we re-order and consolidate as follows: (1) Was the evidence sufficient to prove Lewis engaged in criminal deviate conduct? (2) Was it fundamental error for the trial court to omit a "reasonable theory of innocence" jury instruction under Hampton v. State, 961 N.E.2d 480 (Ind. 2012)? (3) Did the trial court commit reversible error in admitting evidence of Lewis's prior conduct after drinking alcohol as "habit" evidence under Indiana Evidence Rule 406? (4) Was the trial court's sentencing order adequate and correct as a matter of law?

5

**I.      The Evidence Was Sufficient to Support the Conviction for Criminal Deviate Conduct.**

For sufficiency of evidence claims, "the standard rule of review involves a consideration of only the probative evidence and reasonable inferences supporting the verdict without weighing the evidence or assessing witness credibility.  The evidence is sufficient if a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt."  Matheney v. State, 583 N.E.2d 1202, 1208 (Ind. 1992) (internal citation omitted).

The crime of criminal deviate conduct was defined at the time of the offense by Indiana Code section 35-42-4-2 (2008):

> (a) A person who knowingly or intentionally causes another person
> to perform or submit to deviate sexual conduct when:
>> (1) the other person is compelled by force or imminent threat
>> of force;
>> . . .
> commits criminal deviate conduct, a Class B felony.
> (b) An offense described in subsection (a) is a Class A felony if:
>> (1) it is committed by using or threatening the use of deadly
>> force;
>>  . . . [or]
>> (3) it results in serious bodily injury to any person other than
>> a defendant[.]

Deviate sexual conduct was defined in Indiana Code section 35-31.5-2-94 (Supp. 2012) as an act involving either "(1) a sex organ of one (1) person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object."

Lewis argues that the evidence does not prove beyond a reasonable doubt that he either put his penis in contact with Kocsis's anus, or that he penetrated her anus with an object.  Specifically, Lewis asserts that the only evidence supporting the deviate sexual conduct charge was the DNA found on both the outer rim and the inside of Kocsis's anus.  He contends this evidence is circumstantial and insufficient because:  (1) the method of collecting the DNA allowed for cross-contamination, such that only the DNA on the outside of the anus could be reasonably relied upon; (2) there were no injuries to Kocsis's anus consistent with penetration; (3) the DNA itself, though initially identified as semen, could not be proven as such, and thus could have come from sweat, saliva or skin cells unrelated to a sex organ; and (4) the evidence supports an alternate theory that

6

Lewis and Kocsis were engaged in consensual sex which "went horribly wrong." Appellant's Br. at 14.

In support, Lewis relies on Downey v. State, 726 N.E.2d 794, 797–98 (Ind. Ct. App. 2000), which held that rubbing a penis between a person's buttocks was not sufficient to constitute criminal deviate conduct. But we find two substantial distinctions between Downey and this case. First, the victim in Downey testified that there was no contact between her anus and the defendant's penis, nor was there any penetration of her anus. Id. at 797. Second, there was no evidence (forensic or otherwise) of any contact between the defendant's penis and the victim's anus. Id. The evidence in Downey thus negated one of the elements of the crime, making the conviction unsustainable.

Here, the evidence, as construed most favorable to the verdict,[2] is that Lewis lewdly propositioned two other women at Pepe's for sex before leaving with Kocsis, Kocsis's head was bashed into the side of her car hard enough to embed her tooth there, Kocsis drew blood from Lewis, which was found on her steering wheel, Lewis murdered Kocsis,[3] Lewis's DNA was found both on and inside Kocsis's anus, Kocsis was found with her skirt and underwear around her knees and a hand-shaped blood smear or bruise on her exposed buttocks, and Lewis made sexual advances to a third woman shortly after the murder. A jury could reasonably conclude from this evidence that the DNA found in and around Kocsis's anus was the result of a non-consensual sexual act by Lewis, either through direct contact with his penis or through penetration by an object such as Lewis's finger. We thus find sufficient evidence to support the conviction for criminal deviate conduct.

---

[2] Lewis does not appear to challenge the *admission* of the scientific evidence against him; rather, his arguments go to the *weight* of that evidence. This is the province of the trier of fact, and we decline to reweigh the evidence on appeal. See Griesemer v. State, 26 N.E.3d 606, 608 (Ind. 2015) ("We neither reweigh the evidence nor reassess the credibility of witnesses. Instead, we look to the probative evidence supporting the verdict and the reasonable inferences drawn from that evidence.").

[3] Lewis does not appear to dispute the murder conviction on appeal.

## II. The Trial Court's Failure to Give a "Reasonable Theory of Innocence" Instruction Was Not Fundamental Error.

Although Lewis made no objection at trial, he now requests that the Court find the failure to instruct the jury on a "reasonable theory of innocence" was fundamental error. "Failure to object at trial waives the issue for review unless fundamental error occurred." Treadway v. State, 924 N.E.2d 621, 633 (Ind. 2010). "The 'fundamental error' exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. Mathews v. State, 849 N.E.2d 578, 587 (Ind. 2006). "The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process." Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010) (internal quotations omitted).

In Hampton v. State, 961 N.E.2d 480 (Ind. 2012), this Court reviewed its prior jurisprudence as to when a defendant is entitled (and indeed required) to receive a so-called "reasonable theory of innocence" jury instruction:

> When the trial court determines that the defendant's conduct required for the commission of a charged offense, the actus reus, is established exclusively by circumstantial evidence, the jury should be instructed as follows: In determining whether the guilt of the accused is proven beyond a reasonable doubt, you should require that the proof be so conclusive and sure as to exclude every reasonable theory of innocence.

Id. at 491 (emphasis omitted). In Hampton, the only evidence that the defendant raped and murdered the victim was his DNA in her vagina, which plausibly could have arrived there through consensual sex. Id. at 494. Because that circumstantial DNA evidence was the *only* evidence, the trial court was required to give the "reasonable theory of innocence" instruction to the jury. Id. at 494–95.

Lewis claims that the DNA found on Kocsis's anus is the only evidence of deviate sexual conduct in this case, requiring the same inferential step as Hampton. Under his theory, it is equally plausible that Kocsis and Lewis were having consensual sex in the parking lot of the school when something went wrong. But, as described above with respect to Lewis's challenge to the sufficiency of the evidence, there is direct evidence that the activity was not consensual, such as

8

Kocsis's tooth embedded in her car, Lewis's blood on her steering wheel, and the massive physical damage Kocsis suffered at the hands—literally—of Lewis. Given this evidence, it does not fit the requirements of <u>Hampton</u> for a mandatory jury instruction on the reasonable theory of innocence. Thus it was not fundamental error for the trial court to fail to give such an instruction.

### III. The Admission of Testimony Regarding Lewis's Prior Conduct While Consuming Alcohol was Harmless Error.

The trial court allowed Rebecca Hixon, one of the women Lewis profanely propositioned on the night of the murder, to testify that in 2010 at a small gathering of friends, while intoxicated, Lewis "got up in [her friend's] face, and he started yelling at her." Tr. at 226. Additionally, the court allowed Rodney Taylor, who drove Lewis to Pepe's on the night of the murder, to testify that Lewis "goes to like from like a nice guy to a meaner person" when he is drinking. Tr. at 1290. Lewis contends that this testimony was inadmissible under Indiana Evidence Rule 404(b), which prohibits evidence of prior bad acts.[4] The State contends that the trial court properly admitted the testimony under Evidence Rule 406 as evidence of habit.[5]

"The trial court has discretionary power on the admission of evidence, and its decisions are reviewed only for an abuse of that discretion." <u>Wilson v. State</u>, 765 N.E.2d 1265, 1270 (Ind. 2002). With respect to admission of evidence under Rule 406, habit is defined as "evidence of one's regular response to a repeated specific situation." <u>Carlson v. Warren</u>, 878 N.E.2d 844, 850 (Ind. Ct. App. 2007) (quoting <u>Black's Law Dictionary</u> 597 (8th ed. 2004)). It is clear that the

---

[4] Indiana Evidence Rule 404(b)(1) states: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

[5] Indiana Evidence Rule 406 states: "Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness."

9

challenged testimony cannot qualify as evidence of habit. A single event, as described in Hixon's testimony, does not constitute a habit. See Wanke v. Lynn's Transp. Co., 836 F. Supp. 587, 594 (N.D. Ind. 1993) (holding that a single speeding ticket was inadmissible as habit evidence under Federal Rule of Evidence 406, because "one incident simply is too few" to demonstrate a habit of speeding).[6] Similarly, becoming a "meaner person" under generalized circumstances, as in Taylor's testimony, is not a repeated, discrete action consistent with a finding of habit. "Before a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." Thompson v. Boggs, 33 F.3d 847, 854 (7th Cir. 1994) (quoting Simplex, Inc. v. Diversified Energy Sys., Inc., 847 F.2d 1290, 1293 (7th Cir. 1988)). This testimony thus runs afoul of Rule 404(b), as inadmissible character evidence.[7]

That being said, Lewis still must show that the erroneous admission was prejudicial. "[N]ot every trial error requires reversal. Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of the party. To determine whether an error in the introduction of evidence affected the appellant's substantial rights, this Court must assess the probable impact of that evidence upon the jury." Turben v. State, 726 N.E.2d 1245, 1247 (Ind. 2000) (internal citations omitted). Here, the testimony of Hixon, Harris, and Spurlock regarding Lewis's repeated aggressive demands for sex on the night of Kocsis's murder paint a sufficiently clear picture of his temperament and comportment. It is unlikely that a jury

---

[6] "Although we are not bound by interpretations of the Federal Rules of Evidence, we do not hesitate to look to federal cases interpreting the rules for guidance when we are confronted with a similar issue." Dowdy v. State, 672 N.E.2d 948, 951 (Ind. Ct. App. 1996).

[7] This is not to say that such statements regarding a party's violent nature when drunk are always inadmissible; rather, the solicited testimony at issue here was insufficient to constitute evidence of habit under Rule 406, the only grounds propounded by the State. For instance, testimony that the defendant was a "mean drunk" could potentially be admissible under Rule 404(a)(2)(A), if the defendant had previously testified as to his peaceable nature while intoxicated. See, e.g., Pavey v. State, 764 N.E.2d 692, 704 (Ind. Ct. App. 2002) (where murder defendant gave unsolicited testimony that "it is not my nature to kill someone, and it is not my nature to talk about it," prosecution could present rebuttal evidence under Rule 404(a)(2)(A) that defendant had previously talked about killing people).

was significantly swayed by further testimony that Lewis was a mean drunk on top of everything else they heard regarding his conduct on the night of the murder. The admission of this testimony was thus not reversible error. See Buchanan v. State, 767 N.E.2d 967, 969–70 (Ind. 2002) (although admission of sketches and photographs of nude young girls was error, it was harmless given the amount of other evidence supporting the conviction for child molestation).

**IV.** **The Sentencing Order Did Not Contain a Personal Statement that Life Without Parole Was an Appropriate Punishment, in Violation of Harrison v. State and Pittman v. State.**

Indiana Code section 35-50-2-9(g) (2014) states, with respect to sentencing after a murder conviction:

> If the hearing is to the court alone, . . . the court shall:
> (1) sentence the defendant to death; or
> (2) impose a term of life imprisonment without parole;
> only if it makes the findings described in subsection (l).

Indiana Code section 35-50-2-9(l) requires the State to prove beyond a reasonable doubt that at least one aggravating circumstance exists and that it outweighs the mitigating circumstance(s). This, however, is not the end of the inquiry.

In Harrison v. State, we held that a trial court's sentencing order imposing a capital sentence must, at a minimum, address the following four issues: (1) "identify each mitigating and aggravating circumstance found"; (2) "include the specific facts and reasons which lead the court to find the existence of each such circumstance"; (3) "articulate that the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence"; and (4) "the trial court's personal conclusion that the sentence is appropriate punishment for this offender and this crime." 644 N.E.2d 1243, 1262 (Ind. 1995). In 2002, the applicable statute regarding sentences of death or life without parole was revised, such that the trial court no longer made the final sentencing determination in all cases. See Pittman v. State, 885 N.E.2d 1246, 1252–53 (Ind. 2008). We therefore held in Pittman that "under the current statute sentencing orders imposing the death penalty or life imprisonment without parole must comply with Harrison's requirements

only when the trial court sentences without a jury's findings and recommendation." Id. at 1253. This is what occurred here, and neither the trial court's statements at the sentencing hearing, nor its ultimate sentencing order, contain the last Harrison/Pittman factor: a personal conclusion by the judge that life without possibility of parole is the appropriate sentence for Lewis.[8] We therefore reverse the sentence of life without possibility of parole, and remand to the trial court for a revised sentencing order consistent with Harrison and Pittman.[9]

## Conclusion

For the foregoing reasons, we affirm Lewis's convictions, reverse the sentence of life without possibility of parole, and remand to the trial court for a revised sentencing order.

Rush, C.J., and Dickson, Rucker, and David, JJ., concur.

---

[8] In fact, a fair reading of the sentencing hearing transcript is that the trial court did *not* agree with the sentence, but believed Indiana Code section 35-50-2-9(g) allowed for no lesser sentence to be imposed. On that point, we believe the trial court erred. Subsection (g) does not *require* a trial court to impose no less than a sentence of life without possibility of parole if the conditions of subsection (l) are found to exist; rather, it provides that one of those sentences *may only* be imposed if the subsection (l) conditions are met. The trial court has the same discretion as the jury to impose a lesser sentence, irrespective of the subsection (l) analysis.

[9] We decline Lewis's request to enter a revised sentence without remand. Lewis relies upon Dennis v. State, 908 N.E.2d 209 (Ind. 2009), which is readily distinguishable on its facts. Dennis was convicted of multiple crimes with sentences totaling 125 years in addition to the LWOP sentence. Id. at 213. By converting his sentence to a term of 65 years to be served consecutively to his prior sentence, Dennis was sentenced to a total of 190 years—effectively still a life sentence. Id. Balancing the functional impact of the new sentence against judicial economy, the Court decided to revise the sentence itself rather than on remand. Id. Here, the difference between a life sentence and a term of years may well have a significant impact, and we believe the trial judge is in the best position to make such a determination.