## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 23 2018, 8:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Supervising Deputy
Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Donald Wilson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 23, 2018

Court of Appeals Case No.
71A03-1704-CR-830

Appeal from the St. Joseph
Superior Court

The Honorable Elizabeth C.
Hurley, Judge

Trial Court Cause No.
71D08-1608-MR-7

**Robb, Judge.**

## Case Summary and Issues

[1] Following a jury trial, Donald Wilson was convicted of murder and the trial court sentenced Wilson to the maximum sentence of sixty-five years in the Indiana Department of Correction.[1] Wilson appeals his conviction raising two issues for our review: 1) whether the trial court abused its discretion in ordering Wilson to display his tattoo to the jury; and 2) whether the trial court abused its discretion in admitting hearsay testimony pursuant to the excited utterance exception. Concluding any error in ordering Wilson to display his tattoo is harmless and that the trial court did not abuse its discretion in admitting hearsay testimony, we affirm.

## Facts and Procedural History

[2] Wilson and Joann Newgent were neighbors in their apartment complex. In the late afternoon of August 25, 2016, sixty-seven-year-old Newgent knocked on Wilson's apartment door and asked him to turn down his music. Wilson slammed his door in Newgent's face. Newgent returned to her apartment and, within a "matter of minutes," called her friend and neighbor, Clark Curtis, Jr. Transcript, Volume 2 at 96-98. Newgent sounded "very upset" and told Curtis she had "asked [Wilson] to turn down his stereo . . . [because it] is her naptime

---

[1] Following the guilty verdict, Wilson pleaded guilty to unlawful possession of a firearm by a serious violent felon. The trial court sentenced Wilson to six years in the DOC for this offense to run consecutively to his conviction for murder.

. . . [and Wilson] slammed the door in [her] face." *Id.* at 96, 104. A few minutes later, Curtis received another call from Newgent. Curtis answered the phone and heard, "oh, my God . . ." and the call ended. *Id.* at 105. Concerned that Newgent may have suffered a medical emergency, Curtis called 911 and requested the police conduct a welfare check on Newgent.

[3] Shortly thereafter, Officer Joshua Watts of the Mishawaka Police Department arrived at Newgent's apartment. Officer Watts knocked on the door and rang the doorbell, but received no answer. Since Newgent's car was in the parking lot, Officer Watts assumed she was home and opened the door to her apartment. He discovered Newgent laying on the floor in a large pool of blood. Officer Watts also observed pieces of broken particle board and a broken table leg on the floor of the room. Newgent's injuries included three major lacerations on the right side of her scalp, a broken skull, bruising and abrasions on her face, scalp, back, hand, and knee, two fractured ribs, and internal bleeding. Newgent later succumbed to her injuries.

[4] As the police began to evacuate the surrounding area, Jeremy Spencer approached them with his observations. Spencer's wife works at the laundromat across the street from the apartments and he regularly visits her at work. Before the police arrived at Newgent's apartment, Spencer observed Wilson, whom he had recognized from prior occasions, walk by the laundromat on his way to buy dinner from a local restaurant. Spencer stated he was "talking to himself [and] kind of looking around." *Id.* at 125. As Wilson returned carrying two styrofoam containers, Spencer noticed Wilson had a

rebel flag tattoo. Wilson dropped off the styrofoam containers at his apartment and then entered Newgent's apartment. A few minutes later, Spencer observed Wilson exit Newgent's apartment carrying an oval table and three table legs. Wilson carried them to a dumpster and threw them away.

[5] The police made numerous efforts to engage with Wilson and have him exit his apartment, but he did not respond. Following a standoff with Mishawaka's SWAT team, Wilson exited his apartment and was arrested. Corporal Kyle Slater, a St. Joseph County Police Department crime scene investigator, noticed Wilson had cuts on his knuckles. A search of Wilson's apartment discovered a towel stained with Wilson's blood and a pair of jeans containing Newgent's blood and DNA. The police also discovered a handgun in Wilson's apartment.

[6] The State charged Wilson with murder and unlawful possession of a firearm by a serious violent felon, a Level 4 felony. At trial and over Wilson's objection, the court ordered Wilson to display his rebel flag tattoo to the jury.[2] The State also offered the testimony of Terrance Peterson, an inmate in the St. Joseph County Jail. Peterson testified Wilson confessed to murdering Newgent and that he had disposed of evidence. Wilson also told Peterson he "called [Newgent] a b**** and slammed the door in her face." Tr., Vol. 3 at 17. The jury found Wilson guilty of murder. Following the guilty verdict, Wilson pleaded guilty to unlawful possession of a firearm by a serious violent felon.

---

[2] Spencer testified the rebel flag tattoo was located on Wilson's left calf. Wilson's tattoo is located on his left forearm. *See* Tr., Vol. 2 at 140, 151.

The trial court sentenced Wilson to an aggregate term of seventy-one years in the DOC.  Wilson now appeals.

# Discussion and Decision

## I.  Standard of Review

We review a trial court's ruling on the admission of evidence for an abuse of discretion.  *Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015).  A trial court abuses its discretion when its decision regarding admissibility is clearly against the logic and effect of the facts and circumstances before the court.  *Id.*

## II.  Rebel Flag Tattoo

Wilson first argues the trial court abused its discretion in ordering him to display his rebel flag tattoo to the jury.  Specifically, Wilson alleges the rebel flag is a "hate symbol" and its prejudicial impact upon the jury far outweighs its probative value.[3]  Appellant's Brief at 11-12.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Ind. Evidence Rule 401.  A trial court may exclude relevant evidence if its "probative value is substantially outweighed by a danger

---

[3] Wilson did not object at trial to Spencer's testimony that he had a rebel flag tattoo, only its display to the jury.

of . . . unfair prejudice . . . or needlessly presenting cumulative evidence." Evid. R. 403.

[10] Here, Spencer recognized and identified Wilson as the person he observed walking by the laundromat and entering Newgent's apartment without the assistance of the rebel flag tattoo. Spencer testified,

> [Spencer]: He, [Wilson], was walking. Usually he's on a black mountain bike. And when he comes across the parking lot he rides down the sidewalk right in front of the building like behind where my truck was. This day he was walking through the parking lot, like in front of where my truck was. So it struck me as odd.
>
> [State]: You said [Wilson], is that somebody you had seen before?
>
> [Spencer]: Riding his bike. When I'm sitting there at my wife's work, I would seen [sic] him ride by on his bike.
>
> [State]: But it was something you had been seeing?
>
> [Spencer]: Yeah. Numerous times. And then this day he was walking.

Tr., Vol. 2 at 124-25. Spencer clearly identified Wilson as someone he had observed pass by the laundromat on prior occasions and not solely based on the identifying characteristic of his forearm tattoo. As such, displaying the tattoo was cumulative. However, we need not reach the merits of Wilson's argument because any error in displaying the tattoo is harmless.

"Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of the party." *Lewis v. State*, 34 N.E.3d 240, 248 (Ind. 2015). In determining whether a party's substantial rights have been affected, we assess the probable impact of that evidence on the jury. *Id.* Here, the jury heard evidence that Wilson slammed a door in Newgent's face, was observed entering and exiting her apartment at the time of the murder, attempted to discard evidence, had cuts on his knuckles, and confessed to a fellow inmate that he attacked Newgent. The State also presented evidence that Newgent's blood and DNA were found on a pair of jeans in Wilson's apartment. In light of this overwhelming evidence, it is unlikely the jury was significantly swayed by the display of a rebel flag tattoo. Therefore, even if this evidence was improperly admitted, it was not reversible error.

## III. Excited Utterance

Wilson also argues the trial court abused its discretion in admitting evidence of Newgent's first phone call to Curtis concerning her interaction with Wilson. The trial court admitted this evidence pursuant to the excited utterance exception to the rule against hearsay. *See* Evid. R. 803(2). Wilson alleges no "startling event" or "overpowering experience" occurred to support admitting the conversation. Appellant's Br. at 13.

The excited utterance exception to the rule against hearsay permits the admission of hearsay testimony when it is "[a] statement relating to a startling

event or condition, made while the declarant was under the stress of excitement that it caused." Evid. R. 803(2). Thus, for a hearsay statement to be admitted as an excited utterance, three elements must be met: (1) a startling event, (2) a statement made by a declarant while under the stress of excitement caused by the event, and (3) that the statement relates to the event. *Davenport v. State*, 749 N.E.2d 1144, 1148 (Ind. 2001). Application of this exception is not mechanical and admissibility should be determined on a case-by-case basis. *Brittain v. State*, 68 N.E.3d 611, 620 (Ind. Ct. App. 2017), *trans. denied*.

[14] The evidence demonstrates Newgent, a sixty-seven-year-old woman, walked to Wilson's apartment to request that he turn down his music. In response, Wilson called her a b**** and slammed his door in her face. Newgent then returned to her apartment and called Curtis within a "matter of minutes" and informed him of what happened. Tr., Vol. 2 at 98. Curtis testified that Newgent sounded "very upset" on the phone and clearly had an emotional response to Wilson's actions. *Id.* at 96. Under these circumstances, and with Newgent's request to her neighbor being such a simple one—to turn down the music, we cannot say Wilson's unexpected response of insulting Newgent and slamming a door in her face was not a startling event to her. The trial court's decision is not clearly against the logic and effects of the facts and circumstances before it.

# Conclusion

[15] The trial court did not abuse its discretion in admitting evidence. Accordingly, we affirm Wilson's conviction.

[16] Affirmed.

Crone, J., and Bradford, J., concur.