## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 17 2019, 6:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James Harper
Harper & Harper, LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Milton Anderson a/k/a LaQuan Apara, *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff*. | December 17, 2019 <br><br> Court of Appeals Case No. 19A-CR-1314 <br><br> Appeal from the Porter Superior Court <br><br> The Honorable Roger V. Bradford, Judge <br><br> Trial Court Cause No. 64D01-1408-FB-6688 |

**Brown, Judge.**

[1] Milton Anderson a/k/a LaQuan Apara appeals his convictions and sentence for attempted rape as a class B felony, burglary as a class B felony, and robbery as a class C felony.[1] He raises the following issues:

I. Whether the trial court abused its discretion in admitting certain evidence;

II. Whether the court abused its discretion in instructing the jury;

III. Whether the court erred in determining he is a credit restricted felon; and

IV. Whether his sentence is inappropriate in light of the nature of the offenses and his character.

We affirm in part, reverse in part, and remand.

## Facts and Procedural History

[2] In 2014, O.T., who was fifty-eight years old, lived alone. She knew an individual by the name of LaQuan Apara who was a co-worker. She and Apara engaged in "everyday conversation," and Apara would compliment her. Transcript Volume III at 32. At some point, Apara asked her out on a date, and she did not accept his offer. She believed the dialogue at work became inappropriate and told him that she would file a sexual harassment claim against him if he did not stop.

---

[1] The presentence investigation report indicates that Anderson converted to the "Al-Islam religion and changed his name from Milton Anderson to LaQuan Ridi Apara." Appellant's Appendix Volume II at 181. We use Apara to identify the defendant in this decision.

[3]     She never invited him to her home or told him where she lived, but Apara showed up at her home on two occasions months before May 25, 2014. On one occasion, O.T. opened the door and asked him what he was doing there, and Apara said, "Let me in Ms. [T.]." *Id.* at 37. She allowed him in because she did not want any problems outside with neighbors. When she asked how he knew where she lived, he said he "had this type of memory." *Id.* at 36. The visits lasted about thirty minutes, and O.T. ended them because she had things to do and he was uninvited. After the first unannounced visit, she told him that he could not come to her house uninvited because he would not know when she had company, and he said "okay" but returned for the second visit. *Id.* at 39. After the second visit, she told him that she would call the police if he returned. During those visits, Apara did not go upstairs. He used the downstairs bathroom, and O.T. subsequently cleaned it with chemical cleaning agents.

[4]     On May 25, 2014, O.T. returned home from work and dozed off watching television. She was awakened by a noise, went to investigate, and encountered someone in her bathroom with "[s]omething white, like a sheer fabric or something" over his head. *Id.* at 67. She was unable to see a face and asked who the person was and what he was doing in her house. The person told O.T. in a muffled voice to go to the bed and lie down. He placed his hands on O.T.'s shoulders and guided her. O.T. was scared and "proceeded to do whatever he said to do." *Id.* at 7.

He followed O.T. to the bedroom, held his gloved hand over her mouth, and told her not to scream. O.T. was able to determine that the individual was male by hearing his voice. He held her down and repeatedly told her not to yell. O.T. told him she was not going to yell because she was afraid. The man started to "hump" O.T. from behind. *Id.* at 9. He asked her to move to the center of the bed, and she complied. He placed duct tape over her mouth and eyes and taped her wrists together. She was still able to look down.

The man dropped his pants, continued humping her, told her to turn over on her back and that he wanted to see her breasts, and touched her breasts. O.T. felt his body on her and believed his penis touched her near her hip line when she was on her back side but never felt his erect penis. He commanded her to raise her legs several times, and she did so but dropped her legs in an effort to prevent him from having intercourse with her. O.T. cried, and the man said he was sorry and not to call the police "because this will probably never happen again." *Id.* at 14. He also stated that he knew it could be traumatic for her but she would be all right.

The man then asked O.T. for money, and she stated that she did not have any. He asked for jewelry, and she told him where she had two rings by the television stand. He said, "I need more jewelry." *Id.* at 19. O.T. told him there was more jewelry on the dresser, and he went to the dresser and told her he needed a bag. She told him there was a bag in the garbage can, and he removed the bag. He then tied her to a bed post using Mardi Gras beads and told her to lie there and not to move because he had "to get away." *Id.* at 22-23.

[8] After a few minutes, O.T. went downstairs, called the police, and removed the tape from her eyes and mouth. Portage Police Officer Kurt Biggs responded to the scene, and O.T. told the officer that the person was African-American, around 5'7", and in his forties. Officer Biggs observed a sliding glass door, some metal shavings from pry marks, and a screen door with a broken lock.

[9] O.T. participated in a sexual assault examination. At some point, she provided the police with Apara's name because she recognized a familiarity of him based upon her work and personal life. Shawn Stur, a DNA analyst employed by the Indiana State Police Laboratory, performed swabs on the duct tape for DNA and found a mixture of at least three individuals including "a major profile at 11 of the 15 locations" which was consistent with Apara and "estimated to occur once in more than eight trillion unrelated individuals." *Id.* at 218. He also tested the buttocks swab from the sexual assault evidence collection kit and deduced a profile that was consistent with Apara and "estimated to occur once in more than eight trillion unrelated individuals." *Id.* at 222.

[10] On August 1, 2014, the State charged Apara with Count I, attempted rape as a class B felony; Count II, burglary as a class B felony; and Count III, robbery as a class C felony. On August 6, 2018, Apara filed a motion in limine requesting that the court prohibit the State from introducing information regarding O.T.'s speculation that it may have been him when O.T. never positively identified him.

[11] After the jurors were sworn in, Apara's counsel requested a proposed instruction that stated in part: "In determining whether the guilt of an accused is proven --- proven beyond a reasonable doubt, you should require that the proof be so conclusive and sure as to exclude every reasonable theory of innocence." Transcript Volume II at 233.

[12] At trial, O.T. answered affirmatively when asked on direct examination if, in the course of her contact with the police, she recalled ever being asked if the intruder or the suspect seemed familiar to her. She indicated that she did not have an answer for the police at that time. The prosecutor asked if there came a time when "a cord was struck with you in regard a [sic] potential familiarity of who the individual may have been," and Apara's counsel objected on the basis of speculation, her opinion, and prejudice, and incorporated his motion in limine. The prosecutor asserted that it was not speculation. The court indicated that the continuing objection was noted and that the prosecutor could finish the direct examination. O.T. stated that there came a time when she provided the police with Apara's name because she recognized a familiarity of him based upon her work and personal life. Apara's counsel requested a mistrial, and the court denied the motion. The State also presented the testimony of Officer Biggs, the sexual assault nurse examiner, a detective, and Stur. After the State rested, Apara's counsel asked for a dismissal, and the court denied the motion. The jury found Apara guilty as charged.

[13] The probation officer completing the presentence investigation report ("PSI") recommended an aggregate sentence of thirty years. The court found Apara's

criminal history as an aggravator and found no mitigators. It sentenced Apara to twenty years for Count I, ten years for Count II, and four years for Count III. The court ordered the sentences for Counts I and II be served consecutively and concurrently with Count III for an aggregate sentence of thirty years. The court also found Apara was a sexually violent predator and was required to register as a sex offender for life. The court later entered an amendment to the sentencing order indicating that Apara was a credit restricted felon.

## Discussion

## I.

[14] The first issue is whether the trial court abused its discretion in admitting certain evidence. Apara argues that O.T.'s testimony that she suspected that he was the intruder was inappropriate opinion evidence and highly prejudicial. He asserts that her opinion was not rationally based because she repeatedly testified that she did not see the intruder's face and did not know his identity.

[15] The trial court has broad discretion to rule on the admissibility of evidence. *Bradley v. State*, 54 N.E.3d 996, 999 (Ind. 2016). A trial court's ruling on the admission of evidence is generally accorded a great deal of deference on appeal. *Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015), *reh'g denied*.

[16] Ind. Evidence Rule 701 provides that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is . . . rationally based on the witness's perception" and "helpful to a clear understanding of the witness's testimony or to a determination of a fact in

issue." Ind. Evidence Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

While O.T. was unable to see the face of the attacker and his voice was muffled, she testified to her description of the attacker and her familiarity with Apara. As to the challenged testimony, O.T. merely answered affirmatively when asked if there came a time that she provided the police with a name when she recognized a familiarity of the intruder based upon her work and personal life, and answered "LaQuan Apara," when asked for the person's name. Transcript Volume III at 45. Under the circumstances, we cannot say the trial court abused its discretion in admitting this testimony.

## II.

The next issue is whether the trial court abused its discretion in instructing the jury. Generally, "[t]he purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Overstreet v. State*, 783 N.E.2d 1140, 1163 (Ind. 2003), *cert. denied*, 540 U.S. 1150, 124 S. Ct. 1145 (2004). Instruction of the jury is generally within the discretion of the trial court. *Id.* at 1163-1164.

Apara argues that the court erred when it denied his request to instruct the jury that it must exclude "every reasonable theory of innocence" before convicting

him and relies on *Hampton v. State*, 961 N.E.2d 480 (Ind. 2012). Appellant's Brief at 15.

[20] In *Hampton*, the Court held:

> [W]hen the trial court determines that the defendant's conduct required for the commission of a charged offense, the *actus reus*, is established exclusively by circumstantial evidence, the jury should be instructed as follows: *In determining whether the guilt of the accused is proven beyond a reasonable doubt, you should require that the proof be so conclusive and sure as to exclude every reasonable theory of innocence.*

961 N.E.2d at 491. In that case, "the only evidence that the defendant raped and murdered the victim was his DNA in her vagina, which plausibly could have arrived there through consensual sex." *Lewis v. State*, 34 N.E.3d 240, 247 (Ind. 2015) (citing *Hampton*, 961 N.E.2d at 494). "Because that circumstantial DNA evidence was the *only* evidence, the trial court was required to give the 'reasonable theory of innocence' instruction to the jury." *Id.* (citing *Hampton*, 961 N.E.2d at 494-495).

[21] The direct evidence in this case included O.T.'s testimony, signs of forced entry into O.T.'s home, the tape over her mouth and eyes, and the tape holding her wrists together. We cannot say that the trial court's failure to provide a reasonable theory of innocence instruction warrants reversal. *See id.* (rejecting the defendant's argument that the DNA found on a victim's anus was the only evidence of deviate sexual conduct, observing that there was direct evidence that the activity was not consensual including the victim's tooth embedded in

her car, the defendant's blood on her steering wheel, and the physical damage suffered by the victim, and holding that, given this evidence, the case did not fit the requirements of *Hampton* for a mandatory jury instruction on the reasonable theory of innocence).

## III.

[22] Apara argues that the trial court erred when it designated him as a credit restricted felon even though the relevant statute does not apply to the charges against him. The State agrees that Apara is not a credit restricted felon and that remand is appropriate to correct the sentencing order. Ind. Code § 35-31.5-2-72 defines a "[c]redit restricted felon," and Apara does not fall under those definitions.[2] Accordingly, we reverse and remand for the trial court to correct the sentencing order.

---

[2] Ind. Code § 35-31.5-2-72 provides:

> "Credit restricted felon" means a person who has been convicted of at least one (1) of the following offenses:
>
> (1) Child molesting involving sexual intercourse, deviate sexual conduct (IC 35-42-4-3[)], prior to amendment on July 1, 2014 for crimes committed before July 1, 2014, or other sexual conduct (as defined in IC 35-31.5-2-221.5) for a crime committed after June 30, 2014, if:
>
>> (A) the offense is committed by a person at least twenty-one (21) years of age; and
>> (B) the victim is less than twelve (12) years of age.
>
> (2) Child molesting (IC 35-42-4-3) resulting in serious bodily injury or death.
>
> (3) Murder (IC 35-42-1-1), if:
>
>> (A) the person killed the victim while committing or attempting to commit child molesting (IC 35-42-4-3);
>> (B) the victim was the victim of a sex crime under IC 35-42-4 for which the person was convicted; or

[23] The next issue is whether Apara's sentence is inappropriate in light of the nature of the offenses and his character. Apara acknowledges that the offense was extremely serious but points out that no weapons were involved and O.T. did not sustain any physical injuries. He also argues that the fact that the three offenses constituted a single episode of criminal conduct also supports shorter or concurrent sentences.

[24] Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[25] Ind. Code § 35-50-2-5 provides that a person who commits a class B felony shall be imprisoned for a fixed term of between six and twenty years with the advisory sentence being ten years. Ind. Code § 35-50-2-6 provides that a person who commits a class C felony shall be imprisoned for a fixed term of between two and eight years with the advisory sentence being four years.

---

(C) the victim of the murder was listed by the state or known by the person to be a witness against the person in a prosecution for a sex crime under IC 35-42-4 and the person committed the murder with the intent to prevent the victim from testifying.

[26] To the extent Apara asserts that the offenses constituted a single episode of criminal conduct and requests concurrent sentences, we observe that at the time of the offenses, Ind. Code § 35-50-1-2 provided that a "crime of violence" included burglary as a class B felony. Thus, the consecutive-sentencing limitation in Ind. Code § 35-50-1-2 does not apply. *See Johnson v. State*, 749 N.E.2d 1103, 1110 (Ind. 2001) ("[T]he limitations the statute imposes on consecutive sentencing do not apply between crimes of violence and those that are not crimes of violence.").

[27] Our review of the nature of the offense reveals that Apara worked with O.T., his dialogue at work became inappropriate, and she told him that she would file a sexual harassment claim against him if he did not stop. He showed up uninvited twice at her residence. After the second visit, she told him that she would call the police if he returned. On May 25, 2014, Apara broke into O.T.'s residence, held his hand over her mouth, held her down, repeatedly told her not to yell, placed tape over her mouth and eyes, and taped her wrists together. He dropped his pants, "hump[ed]" her, and touched her breasts. Transcript Volume III at 9. O.T. felt his body on her body and believed his penis touched her near her hip line when she was on her back side. He repeatedly told her to raise her legs, and she did so but dropped her legs in an effort to prevent him from having intercourse with her. He then took her jewelry.

[28] Our review of the character of the offender reveals that Apara had been employed by the City of Gary for nine years at the time of his arrest. He was charged with two counts of burglary in 1981 but the PSI lists the disposition as

unknown. Apara was convicted of felony murder in 1983 in which he "robbed a purse from a 71-year-old victim and stabbed her to death with a four-inch knife." Appellant's Appendix Volume II at 179. He received a sentence of fifty-five years for that offense. The PSI indicates that, during sentencing for the felony murder, the court noted that he had a theft adjudication and a burglary pending before the court. It states that Apara did not remember the juvenile adjudication and stated that the burglary charge was dismissed. The PSI also states that his overall risk assessment score using the Indiana risk assessment system places him in the high risk to reoffend category. After due consideration, we conclude that Apara has not sustained his burden of establishing that his aggregate sentence of thirty years is inappropriate.

[29] For the foregoing reasons, we affirm Apara's convictions and sentence, reverse his designation as a credit restricted felon, and remand for the trial court to correct its sentencing order.

[30] Affirmed in part, reversed in part, remanded.

Baker, J., and Riley, J., concur.