

IN THE

# Court of Appeals of Indiana

DeJuan Lamar Kelley,

*Appellant-Defendant*



FILED

Jun 23 2026, 9:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

State of Indiana,

*Appellee-Plaintiff*

---

June 23, 2026

Court of Appeals Case No.
25A-CR-1454

Appeal from the Monroe Circuit Court

The Honorable Valeri Haughton, Judge

Trial Court Cause No.
53C02-2006-MR-443

---

**Opinion by Chief Judge Tavitas**

Judge Foley concurs.
Judge Weissmann dissents with separate opinion.

**Tavitas, Chief Judge.**

## Case Summary

After his first jury trial for murder ended in a mistrial, DeJuan Kelley was retried and convicted of reckless homicide, a Level 5 felony. Kelley appeals and argues that his retrial constituted procedural double jeopardy and that the trial court abused its discretion in sentencing him. We disagree and affirm.

## Issues

Kelley presents two issues, which we restate as:

I. Whether Kelley's retrial constituted procedural double jeopardy.

II. Whether the trial court abused its discretion in sentencing him.

## Facts

Early in the morning of June 7, 2020, then-twenty-year-old Kelley stopped at a gas station on North Walnut Street in Bloomington. There, he unexpectedly encountered Emeriee Bryant, his ex-girlfriend. The relationship between Kelley and Bryant had ended only months earlier.

[4]     When Bryant arrived at the gas station that night, she was accompanied by Michael Parker, Taleah Vaught, and Vaught's cousin. Parker stayed in the vehicle while Bryant, Vaught, and Vaught's cousin went inside. While Bryant was in the restroom, Vaught noticed Kelley and told him to leave. Kelley declined. Bryant then left the restroom and saw Kelley, prompting a verbal confrontation between them inside the store. At some point during the in-store encounter, Kelley pulled a handgun from his waistband and pointed it at Bryant. The confrontation soon spilled outside, where Kelley walked around the rear of the vehicle in which Parker was located. He then fired two shots from his firearm. One bullet shattered the driver's side window and struck Parker, who was still seated in the driver's seat with the tinted windows up. Parker was hit in the left side of his neck and later died at the hospital.

[5]     Kelley was later apprehended and claimed that he aimed at the car door only to scare Bryant and that he did not know Parker was inside due to the tinted car windows and his poor eyesight. The State ultimately charged Kelley with murder, attempted murder, and carrying a handgun without a license. On November 20, 2023, the State filed a motion in limine seeking to prevent the introduction of:

> Any questions, testimony, comments, argument or evidence of prior charged or uncharged criminal acts of any of the State's witnesses, including the alleged victims. See Ind. Evid. R. 401, 403, 404, and 405. Specific instances of conduct may be used to prove character only when the person's trait of character is an essential element of a charge, claim, or defense. Ind. Evid. R. 405(b).

Appellant's App. Vol. II p. 89. The trial court later granted the State's motion in limine as to this request.

[6] Kelley's first trial began on February 2, 2024. After the jury was sworn, but before opening statements, the trial court instructed the jury that counsel's opening statements "are not evidence and should be considered only as a preview of what the attorneys expect the evidence will be." Tr. Vol. II p. 17. During opening statements, defense counsel referenced the testimony of Vaught, who was listed as the State's first witness, stating:

> Taleah Vaught, a State's witness here, may testify to some purported statements that [Kelley] and others made[] [w]hile in that store. **But when you listen to Taleah Vaught, you are listening to a person who seems to find herself in the center of a lot of violent crime scenes. A person familiar to the police.** A person who is facing a level 5 felony. Right here in Monroe County. Intimidation with a deadly weapon.

*Id.* at 24 (emphasis added).

[7] The State objected and moved for a mistrial, arguing that defense counsel's statements improperly portrayed Vaught as a criminal and, therefore, constituted a reference to inadmissible character evidence. The State also asserted that defense counsel's remarks violated the trial court's order in limine. Defense counsel contended that a mistrial was unnecessary and that she was simply previewing admissible evidence, given that defendants have a constitutional right to cross-examine a State's witness to show the witness's bias. Defense counsel also argued that the State's motion in limine had not

specifically sought exclusion of Vaught's pending charge and that the trial court, therefore, had not preliminarily barred such evidence. Defense counsel argued that, even if her comments were improper, a jury admonishment was the appropriate remedy.

[8] Before recessing to research the issue, the trial court told the parties: "[I]f I say it's not permitted, I'm going to grant the mistrial . . . [b]ecause that's just too much." *Id*. at 28. Upon returning, the trial court acknowledged that the cross-examination of Vaught about her pending charge would likely have been permissible. But the trial court ruled that defense counsel's disclosure of Vaught's pending charge during opening statements was different and that an admonishment was not a viable cure for the purported misstep. More importantly, the trial court found that defense counsel's statements referring to Vaught's presence at violent crime scenes and familiarity to police were not evidence of bias and, instead, were improper character attacks.

[9] Defense counsel again requested an admonishment, rather than a mistrial, and noted that Vaught was confirmed as the State's first witness and the jury had already been instructed that opening statements are not evidence. The trial court again refused the admonishment, stating, "I don't think you can unwring [sic] the bell." *Id*. at 31. The trial court continued:

> I think that it's just impossible for the jury to go forward listening
> to that opening and to those statements about Ms. Vaught
> without, and I could admonish, but quite frankly I think even if it
> didn't come up, I get questions from [the] jury about what were
> the crimes, what was this, what was that. I just do not think that

> I can remedy that, those statements and it sounded to the Court like an attempt to defame her before she was testifying, before she was subject to direct or cross-examination.

*Id*. The trial court found a mistrial was manifestly necessary under the circumstances. The trial court, therefore, granted a mistrial and dismissed the jury.

[10] Kelley later moved to dismiss the charges, arguing that there was no manifest necessity for the mistrial and that trying him again would constitute procedural double jeopardy. The trial court denied the motion, again finding that manifest necessity had existed and that Kelley's counsel bore responsibility for causing the mistrial.[1]

[11] Kelley's second trial on the same charges commenced in March 2025. The jury acquitted Kelley of murder and attempted murder. The jury, however, found him guilty of the lesser included offense of reckless homicide, a Level 5 felony, as well as carrying a handgun without a license, a Class A misdemeanor. The trial court sentenced Kelley to an aggregate of six years. Kelley now appeals.

---

[1] Kelley requested that the trial court certify its order for interlocutory appeal, which the trial court granted. But the motions panel of this Court declined to accept interlocutory jurisdiction.

## Discussion and Decision

### I. Kelley's retrial did not constitute procedural double jeopardy.

[12] Kelley first claims that the trial court abused its discretion by concluding that there was a manifest necessity for a mistrial during the first jury trial. Kelley, therefore, argues that his second trial constituted impermissible procedural double jeopardy. We disagree.

[13] "The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides that '[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb.'" *Brock v. State*, 955 N.E.2d 195, 199 (Ind. 2011) (quoting U.S. Const. amend. V). Jeopardy attaches when the jury is impaneled and sworn. *Id.* (citing *Downum v. United States*, 372 U.S. 734, 736-37 (1963); *Jackson v. State*, 925 N.E.2d 369, 373 (Ind. 2010)). But the fact that jeopardy has attached "merely 'begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause' barred [a] second trial." *Id.* (quoting *Illinois v. Somerville*, 410 U.S. 458, 467 (1973)).

[14] The *Brock* Court further explained:

> The constitutional protection against double jeopardy has several features. In this case, because the first trial ended in a mistrial, we deal with the defendant's "valued right to have his trial completed by a particular tribunal," *Wade v. Hunter*, 336 U.S. 684, 689 (1949), which means that the defendant has a right to have his trial completed by the first jury impaneled to try him, *Oregon v. Kennedy*, 456 U.S. 667, 673 (1982). Valued though this right may be, it "must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments."

*Wade*, 336 U.S. at 689; *see also United States v. Jorn*, 400 U.S. 470, 483-84 (1971) (plurality opinion). Accordingly, unlike a trial that has ended with a judgment on the merits, declaration of a mistrial does not automatically bar retrial. *Arizona v. Washington*, 434 U.S. 497, 505 (1978).

955 N.E.2d at 199. If a trial court declares a mistrial over the defendant's objection, the defendant may be retried only if the mistrial was justified by a "manifest necessity," or that "the ends of public justice would otherwise be defeated." *Id*. (citations omitted).[2]

[15] Manifest necessity "does not mean that a mistrial had to be necessary in a strict, literal sense." *Eichelburger v. State*, 251 N.E.3d 1106, 1113 (Ind. Ct. App. 2025) (citations and internal quotation marks omitted); *accord Englehardt v. State*, 218 N.E.3d 606, 611 (Ind. Ct. App. 2023). "Nor is the trial court required to state that it considered alternative solutions but found them [to be] inadequate." *Eichelburger*, 251 N.E.3d at 1113. Instead, there need only be a "high degree" of necessity to conclude that a mistrial was appropriate. *Id*. Importantly, we must accord "the **highest** degree of respect" to the trial court's determination that the jury may have been affected by an improper comment. *Id*. (emphasis added). Although a mistrial is an "extreme remedy," we still review the trial court's grant of a mistrial only for an abuse of discretion. *Id*. A court should consider

---

[2] If, however, the defendant consents to the mistrial, then retrial is permitted as a matter of course, unless the defendant can prove that the government intentionally goaded him or her into consenting to the mistrial "to subvert the protections afforded by the Double Jeopardy Clause." *Id*. (quoting *Kennedy*, 456 U.S. at 676).

a variety of factors that "may bear on the need for a mistrial." *Id*. (citing *Jackson*, 925 N.E.2d at 373).

### A. The mistrial was attributable entirely to the defense.

The first of these factors is the extent to which the need for the mistrial is attributable to the State, which is a "significant factor." *Id*. If the reason for the mistrial is attributable to the State, it must demonstrate a much higher degree of necessity for the mistrial. *Id*. In contrast, "'[a] defendant who creates his own cause for mistrial presents no error.'" *Vaughn v. State*, 971 N.E.2d 63, 70 (Ind. 2012) (quoting *Avant v. State*, 528 N.E.2d 74, 78 (Ind. 1988)).

Here, the mistrial was not attributable to the State and was instead entirely attributable to the defense. Defense counsel's attack on Vaught's character occurred after the trial court had granted a motion in limine prohibiting the introduction of improper character evidence. Defense counsel's statements characterizing Vaught as someone who "seems to find herself in the center of a lot of violent crime scenes" and as "a person familiar to the police" were improper character evidence and in direct violation of the court's order in limine. Tr. Vol. II p. 24. Indeed, defense counsel acknowledged on the record that she had "researched this thoroughly beforehand" precisely because she "anticipated this objection." *Id.* at 33.

Kelley contends that his defense counsel could properly reference Vaught's pending criminal charge during opening statements as anticipated evidence of bias, citing *Smith v. State*, 721 N.E.2d 213 (Ind. 1999). We are not persuaded.

Evidence Rule 609 "draws a bright line at conviction," and, accordingly, a witness generally may not be impeached by specific acts of misconduct that have not resulted in criminal convictions. *Corbett v. State*, 179 N.E.3d 475, 491 (Ind. Ct. App. 2021) (citations and internal quotation marks omitted). A witness's pending criminal charges, however, may be evidence of bias, and a defendant has a constitutional right to explore those charges on cross-examination, if there is evidence linking the charges to the witness's bias. *Smith*, 721 N.E.2d at 219-20; *Tolliver v. State*, 922 N.E.2d 1272, 1286 (Ind. Ct. App. 2010). Thus, *Smith* addressed the constitutional right to cross-examine a witness about pending charges that may reveal bias; *Smith* did not address opening statements.

[19] Here, defense counsel made her statements *before* the presentation of any evidence and before the pending charge had been linked to any bias. The trial court correctly recognized this distinction and acknowledged that defense counsel could likely have inquired about Vaught's pending charge on cross-examination but could not mention the pending charge in her opening statement.

[20] Moreover, even if *Smith* could be read to permit disclosure of the pending charge during opening statements, we cannot ignore defense counsel's statements that Vaught "seems to find herself in the center of a lot of violent crime scenes" and is "a person familiar to the police." Tr. Vol. II p. 24. Those statements were pure propensity evidence with little relationship to Vaught's potential bias, and they were the central basis for the trial court's ruling. *See*

Ind. Evidence Rule 404(b) (generally prohibiting evidence of prior misconduct "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character").

Kelley also relies on *Eichelburger* and *Englehardt*, but in neither of those cases did defense counsel violate an order in limine during opening statements. In *Eichelburger*, the pretrial order did not prohibit the questions that defense counsel asked, and the jury had already heard about the matter from prior testimony. 251 N.E.3d at 1115. And in *Englehardt*, the improper statement came from a defense witness, a circumstance defense counsel could not fully control. 218 N.E.3d at 611. Here, in contrast, the trial court specifically found that defense counsel introduced improper character evidence after being placed on notice not to do so by the court's order in limine. Thus, the first factor weighs heavily in favor of the necessity of a mistrial.

### B. The trial court adequately considered alternatives to a mistrial.

The next factor to consider is "the necessity of the mistrial in light of the steps taken by the trial court to avoid the mistrial." *Eichelburger*, 251 N.E.3d at 1113. "This factor encompasses considerations such as whether the trial court provided counsel the opportunity to be heard, considered alternatives, and made its decision after adequate reflection." *Id.* Here, the trial court conducted a hearing regarding the State's motion for a mistrial and heard arguments from both parties; it then recessed to research the law; it reviewed the recording of defense counsel's opening statements; and it made specific findings and explained its reasons for granting the mistrial.

[23]     Even though the trial court was not required to explicitly state on the record that it had considered less-severe alternatives before declaring a mistrial, *see Englehardt*, 218 N.E.3d at 610, the trial court explicitly acknowledged that an admonishment was an option, but found it to be an insufficient remedy. An admonishment directing the jury to disregard defense counsel's characterization of Vaught would have also required the trial court to repeat, and risk reinforcing, the improper statements. The trial court was in the best position to determine whether an admonishment would be sufficient, and we will not second-guess the trial court's decision on this matter.

[24]     Kelley also argues that the trial court effectively foreclosed consideration of any alternatives to a mistrial before hearing the arguments of the parties. Kelley refers to the trial court's pre-recess statement that "if I say it's not permitted, I'm going to grant the mistrial . . . because that's just too much." Tr. Vol. II p. 28. We do not read that statement as a prejudgment. The trial court made it clear that the ruling was conditional, i.e., it depended on a legal conclusion the court had not yet reached. The trial court then recessed for nearly an hour to research the applicable law, reviewed the recording of defense counsel's opening statement, resumed argument, heard further argument from both sides, and issued a ruling explaining why admonishment was insufficient. That process mirrors what this Court found adequate in *Pavey*, 764 N.E.2d at 699-700, where the trial court also gave both parties a full opportunity to be heard before granting a mistrial.

Kelley argues that, because the jury had been instructed that statements of counsel are not evidence, the harm done by defense counsel's statements was minimal. But this argument would apply in every case where improper statements are made by counsel, making a mistrial never truly necessary. The preliminary jury instruction did not eliminate the prejudice created by defense counsel's improper statements, and the trial court, not this Court, was in the best position to assess whether an admonishment would adequately cure the harm. In short, the second factor also weighs in favor of the necessity of a mistrial.

### C. The burden of the mistrial was lessened due to its timing.

The third factor we consider is the burden imposed by a mistrial. *Eichelburger*, 251 N.E.3d at 1113. In considering this factor, we focus on "the values underlying the protection against double jeopardy—the burden on the accused, the associated stigmatization as one accused, and the increased risk of wrongful conviction." *Id*. (citation and internal quotation marks omitted). These values must be weighed against allowing the State "one complete opportunity for a conviction." *Id*. at 1113-14. These considerations are not given as much weight "when the trial is terminated shortly after jeopardy has attached as opposed to at a later stage in the trial." *Id*. at 1114.

Here, the trial court declared a mistrial shortly after jeopardy attached, during defense counsel's opening statement, before any witness testified. The burden imposed on Kelley by the mistrial was, therefore, less substantial than it would

have been had the trial proceeded further. *See id.* This factor also weighs in favor of the necessity of a mistrial.

### D. *The factors all weigh in favor of the necessity of the mistrial.*

[28] In sum, it was defense counsel who caused the need for the mistrial, the trial court adequately considered the alternatives to a mistrial, and the burden of the mistrial was minimized by it having been declared very early in the proceedings. Considering all of these factors, we conclude that the trial court did not abuse its discretion in concluding that there was a manifest necessity for the mistrial.

[29] We find the present case to be similar to *Pavey*, 764 N.E.2d 692. In that case, defense counsel claimed during opening statements that the State's key witness, who had entered into a plea agreement requiring him to testify truthfully, had been "bought and paid for" and had to "please the Prosecutor" or risk having his plea agreement voided. *Id.* at 697. After the State moved for a mistrial, the trial court listened to a recording of the remarks, heard argument from both sides, and granted a mistrial. On appeal, Pavey argued that his retrial was barred by double jeopardy. We disagreed and held that there was a manifest necessity for the mistrial and that retrial was, accordingly, not barred. *Id.* at 701. Our holding relied heavily on the fact that it was the defense, not the State, that caused the issue requiring the mistrial. *Id.*

[30] Although the misconduct at issue here may not have risen to the level of that in *Pavey*, we reach the same conclusion. It was defense counsel's violation of the

trial court's order in limine that caused the need for the mistrial, and the trial court was in the best position to determine whether an admonishment would suffice.[3]  We, therefore, conclude that the trial court did not abuse its discretion by finding that there was a manifest necessity for declaring a mistrial.  Kelley's retrial, therefore, did not subject him to procedural double jeopardy.[4]

## II.  Kelley's sentencing claims are moot.

[31]  Kelley also claims that the trial court abused its discretion in sentencing him.  The trial court sentenced Kelley to an aggregate term of 2,184 days.  The trial court also found that Kelley had served 1,752 actual days and earned 220 days of good-time credit.  This left a balance of 212 days for Kelley to serve, and no portion of Kelley's sentence was suspended.  Kelley was sentenced on May 15, 2025, and more than 212 days have passed.  As a result, Kelley has already served his sentence.[5]  Because we cannot grant any relief to Kelley on his

---

[3] The dissent references our abuse-of-discretion standard but applies what amounts to de novo review.  The question before us is not whether we would have found an admonishment sufficient, but whether the trial court's conclusion that an admonishment would be insufficient was clearly against the logic and effect of the facts and circumstances before the court.  The dissent appears to require the trial court to explain why an admonishment "would . . . fail," *infra*, slip op. at 19, and, finding no such explanation, concludes for itself that one would have sufficed.  But that assessment was for the trial court, not us, to make.

[4] Kelley also argues that his retrial violated the prohibitions against double jeopardy contained in Article 1, Section 14 of the Indiana Constitution and the double jeopardy statute, Ind. Code § 35-41-4-3(a)(2)(iv), which bars retrial after a jury is sworn unless "prejudicial conduct . . . made it impossible to proceed with the trial without injustice to either the defendant or the state."  But Kelley admits that our courts apply an "identical analysis" under these provisions and the Fifth Amendment.  Appellant's Br. p. 26.  Thus, our conclusion that Kelley was not subject to double jeopardy under the Fifth Amendment also resolves his claims based on state law.

[5] The Department of Correction's offender locator website indicates that Kelley was discharged on May 23, 2026.  https://offenderlocator.idoc.in.gov/idoc-ofs-1.0.2/ofs?lname=kelley&fname=dejuan&search1.x =0&search1.y=0 [https://perma.cc/75Q8-C3E3] (last visited June 8, 2026).

sentencing claims, they are moot. *See Lee v. State*, 816 N.E.2d 35, 40 n.2 (Ind. 2004) (holding that, once a sentence has been served, "'the issue of the validity of the sentence is rendered moot'") (quoting *Irwin v. State*, 744 N.E.2d 565, 568 (Ind. Ct. App. 2001)).[6]

## Conclusion

[32] The trial court did not abuse its discretion in finding that there was a manifest necessity for declaring a mistrial at the beginning of Kelley's first jury trial. Kelley's retrial, therefore, did not subject him to procedural double jeopardy. And Kelley's challenge to his sentence is moot. Accordingly, we affirm the trial court's judgment.

[33] Affirmed.

Foley, J., concurs.

Weissmann, J., dissents with separate opinion.

ATTORNEY FOR APPELLANT

Rachel M. Rogers
Monroe County Public Defender
Bloomington, Indiana

---

[6] Kelley argues in a footnote in his Appellant's Brief that we should nevertheless address his sentencing claim because it presents "a novel issue . . . likely to affect other similarly situated Defendants." Appellant's Br. p. 26 n.18. We disagree. This single-sentence claim is insufficient to invoke the public-importance exception to the mootness doctrine. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring arguments to be supported by cogent reasoning). And even on its merits, whether a trial court appropriately deprived a particular defendant of good-time credit based on that defendant's specific disciplinary record is a fact-sensitive sentencing issue that does not present a question of law of broad public importance that would warrant our review despite the claim being moot.

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Tyler Banks
Deputy Attorney General
Indianapolis, Indiana

**Weissmann, Judge, dissenting.**

[34] Trials are human, messy, and imperfect. The Constitution does not require otherwise. It guarantees a fair trial, not a flawless one. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984) (quoting *Brown v. United States*, 411 U.S. 223, 231-32 (1973)). Trials also are costly—not just financially, but in time, service, and public trust. *See id.*

[35] Given these high stakes, once a jury is sworn and a mistrial is sought by the State over the objection of the defendant, the court may not declare a mistrial unless manifest necessity demands it. *Arizona v. Washington*, 434 U.S. 497, 505 (1978); Ind. Code § 35-41-4-3(a)(2)(iv)[7]. This historically high bar is reached only when prejudicial conduct has made it truly impossible to proceed without

---

[7] The relevant portion of Indiana Code § 35-41-4-3(a) specifies that "[a] prosecution is barred if there was a former prosecution of the defendant based on the same facts and for commission of the same offense and if . . . the former prosecution was terminated after the jury was impaneled and sworn . . . unless . . . prejudicial conduct, in or outside the courtroom, made it impossible to proceed with the trial without injustice to either the defendant or the state . . . ."

injustice to either party. *Washington,* 434 U.S. at 505-06; *Tyson v. State*, 543 N.E.2d 415, 419 (Ind. Ct. App. 1989) ("Indiana recognizes the manifest necessity doctrine" when determining whether a retrial prompted by a mistrial is barred by double jeopardy); Ind. Code § 35-41-4-3(a)(2)(iv).

[36] Today, the majority lowers that bar to a level I find troubling. Under its reasoning, a brief, overreaching but easily curable comment during the defense's opening statement justifies discharging a sworn jury over the defendant's objection. The damage caused by this lessened standard extends beyond Kelley, who, due partly to the delays caused by the mistrial, has already fully served his sentence for his offenses. Today's decision causes broader damage by transforming mistrials from a recognized remedy of last resort to a presumably appropriate first response when inevitable trial mistakes are made. *See Lucio v. State*, 907 N.E.2d 1008, 1010-11 (Ind. 2009) ("The remedy of mistrial is 'extreme,' strong medicine that should be prescribed only when 'no other action can be expected to remedy the situation' at the trial level") (citations omitted).

[37] Here, counsel's remarks concerned one of the State's witnesses—Vaught—whom defense counsel described as facing a pending felony charge, as "familiar to the police," and as being "in the center of a lot of violent crime scenes." Tr. Vol. II, p. 24. Those remarks came before any evidence was admitted and after the jury had been instructed that opening statements were not evidence. And while I agree that some of the defense comments were improper, the harm they generated could have been effectively offset by a direct admonishment, which is

perfectly suited for this purpose. The fundamental purpose of an admonishment is to neutralize the prejudicial effects of trial errors by instructing jurors to disregard inadmissible evidence and not rely on it when making their decisions. Here, in my view, the trial court treated a curable flaw as an incurable crisis and erred in granting a mistrial.

## I. An Admonishment Was the Proper Remedy

[38] The trial court rejected an admonishment for two reasons: the bell could not be unrung and jurors might later have questions about Vaught. The majority calls that "adequate[] consider[ation]" of alternatives to mistrial. Maj. op., ¶28. But neither of the court's reasons answers the question that manifest necessity requires: why would an admonishment fail? *See Dillard v. State*, 755 N.E.2d 1085, 1090 (Ind. 2001) ("When a trial judge admonishes the jury to disregard an event that occurred at trial, the admonishment is usually an adequate curative measure, and a mistrial is not necessary").

[39] The majority supplies its own answer to this critical question. It determines that an admonishment would have required the court to "repeat, and risk reinforcing," the improper remarks and therefore would have been ineffective. Maj. op., ¶23. But "'[r]eversible error is seldom found when the trial court has admonished the jury to disregard a statement made during the proceedings.'" *Owens v. State*, 937 N.E.2d 880, 895 (Ind. Ct. App. 2010). This is so because appellate courts presume that a timely and accurate admonishment by the trial court will cure any harm and that jurors follow the court's instructions in

reaching their verdicts. *Jones v. State*, 101 N.E.3d 249, 258 (Ind. Ct. App. 2018) (quoting *Bradley v. State*, 649 N.E.2d 100, 108 (Ind. 1995)).

[40] In any case, the majority's concern that an admonishment would repeat and reinforce the improper remarks is not a categorical bar to a mistrial but, rather, a factor to be considered by the trial court in exercising its discretion and shaping a particular remedy for the trial error. *See Norton v. State,* 785 N.E.2d 625, 628-29 (Ind. Ct. App. 2003) (affirming denial of mistrial without admonishment where trial court agreed with the requesting party that the admonishment would only aggravate the harm). Every admonishment risks reminding jurors of the matter they must disregard. If that risk alone makes an admonishment inadequate, then admonishments are inadequate in every case.

[41] The trial court's stated reasons do not show an admonishment was inadequate. Its "unring the bell" explanation answers the wrong question. Jurors obviously can never unhear improper comments, stricken testimony, or withdrawn questions. But the purpose of an admonishment is not to erase what jurors heard. It is to direct what they may consider in reaching a verdict. Jurors' mere exposure to an improper comment from counsel does not render an admonishment or curative instruction inefficacious. *See, e.g., Wright v. State*, 690 N.E.2d 1098, 1112 (Ind. 1997) (ruling that mistrial was not required when the prosecutor's improper statement was fleeting and the trial court instructed the jury that the prosecutor's statement was not evidence), *abrogated on other grounds by Konkle v. State*, 253 N.E.3d 1068, 1082 (Ind. 2025).

Nor does possible juror curiosity justify a mistrial. The court worried jurors might later ask questions about Vaught. But anyone who has served on a jury knows that jurors often wonder about matters they are told not to consider. Instructions and admonishments erect effective boundaries, separating that which jurors may consider in reaching a verdict from that which they may not. *See, e.g.*, Ind. Evidence Rule 105 ("If the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly"). And juries are presumed to follow a court's instructions and admonishments. *Weisheit v. State*, 109 N.E.3d 978, 989 (Ind. 2018) (instructions); *Kocielko v. State*, 938 N.E.2d 243, 252 (Ind. Ct. App. 2010) (admonishments).

The trial court gave no reason why this jury—freshly instructed that opening statements were not evidence—could not follow a targeted admonishment to disregard improper comments about one witness. If this jury could not do that, it is hard to see how any jury could perform the basic work we ask of jurors every day: follow limiting instructions, disregard stricken testimony, ignore withdrawn questions, and decide cases only on admitted evidence.

## II. Fault Is Not Necessity

The majority places great weight on the fact that the mistrial was "entirely attributable entirely to the defense." Maj. op., ¶17. But fault does not automatically equate to manifest necessity. *See, e.g.*, *Hall v. State*, 722 N.E.2d

1280, 1283 (Ind. Ct. App. 2000) (finding no manifest necessity for a mistrial in bench trial after defense counsel improperly asked State's witness about pending drug charge and trial judge, after granting the mistrial, stated he could "forget what I heard"). As *Hall* establishes, a curable error remains curable even when the defense caused it.

[45] The majority's prejudice analysis also overstates the record. Counsel's reference to Vaught's pending felony charge concerned evidence the trial court acknowledged Kelley likely could have explored on cross-examination. And Vaught was the State's first witness, present at the courthouse and about to testify. The majority never explains why evidence likely admissible from the witness stand became incurably prejudicial because counsel mentioned it shortly before the witness took the stand.

[46] That leaves two improper comments: (1) Vaught "seems to find herself in the center of a lot of violent crime scenes"; and (2) Vaught was "[a] person familiar to the police." Tr. Vol. II, p. 24. These statements may have crossed a line. But they were brief, isolated, and directed at one witness's character. They did not touch the State's evidence, attack the integrity of the prosecution, or threaten the fairness of the trial in any way an admonishment could not cure. A jury told minutes earlier that openings are not evidence did not need to be discharged over those two flawed sentences. *See Wright*, 690 N.E.2d at 1112 (affirming denial of mistrial where the prosecutor's improper statement was "fleeting" and the court instructed the jury that the prosecutor's statement was not evidence).

[47] Nor does *Pavey v. State*, 764 N.E.2d 692 (Ind. Ct. App. 2002), compel that result. There, defense counsel told the jury the State's key witness had been "bought and paid for" and had to please the prosecutor or lose his plea deal. *Id.* at 698. That was a direct attack on the integrity of the State. By contrast, this case involved two vague comments about one of several witnesses to the shooting, plus a reference to impeachment evidence the trial court acknowledged could likely be explored on cross-examination.

[48] The majority concedes the misconduct here "may not have risen to the level of that in *Pavey*" but reaches the same result. Maj. op., ¶30. But in treating this case like *Pavey*, the majority shifts the inquiry from whether counsel's remarks were too toxic for an admonishment to cure to whether the defense caused the problem. That is too low a bar for manifest necessity. *See Hall*, 722 N.E.2d at 1283 (no manifest necessity for a mistrial for defense counsel's improper questioning of State's witness during bench trial when judge stated he could disregard it).

## III. The Mistrial Burden

[49] Moreover, the majority's timing analysis does not fully account for what retrial costs a defendant. Underlying the Double Jeopardy Clause of the Fifth Amendment is the belief that "'the State . . . should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the

possibility that even though innocent he may be found guilty.'" *Green v. United States*, 355 U.S. 184, 187-88 (1957). "Where, as here, a mistrial has been declared, the defendant's 'valued right to have his trial completed by a particular tribunal' is also implicated." *United States v. Dinitz*, 424 U.S. 600, 606 (1976) (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)). Retrials also foist additional financial burdens on the counties in which they occur.

[50] These burdens collectively are significant enough that both federal and state constitutions forbid a second trial absent manifest necessity. *Washington*, 434 U.S. at 505 ("[A]s a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial"); *Hall*, 722 N.E.2d at 1282-83; U.S. Const. amend. V; Ind. Const. art. 1, § 14. Reviewing courts are to consider these burdens when evaluating the propriety of the trial court's ruling on the mistrial. *Englehardt v. State*, 218 N.E.3d 606, 611 (Ind. Ct. App. 2023) ("The relevant focus is upon 'the values underlying the protection against double jeopardy—the burden on the accused, the associated stigmatization as one accused, and the increased risk of wrongful conviction'") (quoting *Jackson v. State,* 925 N.E.2d 369, 374 (Ind. 2010)).

[51] Kelley had already carried those burdens for nearly four years before his first jury was sworn. The mistrial added thirteen more months, another round of preparation, and a second trial after which he was ultimately acquitted of murder and attempted murder and convicted only of much less serious charges. The State, by contrast, received what double jeopardy rarely allows: another opportunity to convict.

[52] So although the mistrial occurred early in the trial, that timing cuts both for and against Kelley. The early mistrial may have reduced the waste of completed trial proceedings, but it also made an admonishment more likely to work. No witness had testified. No evidence had been admitted. No narrative had taken hold. And the jury had just been told that it could not consider counsel's statements as evidence.

## IV. Curable Error Is Not Manifest Necessity

[53] Kelley argued that the preliminary instruction that counsel's statements are not evidence minimized any harm from counsel's remarks. The majority answers that this argument "would apply in every case where improper statements are made by counsel, making a mistrial never truly necessary." Maj. op., ¶25. The majority has it backwards.

[54] Kelley does not argue that the preliminary instruction, standing alone, made mistrial unavailable. His point is more practical. Having just been told that opening statements were not evidence, the jury was already prepared to understand and follow an admonishment directing it to disregard counsel's improper comments. If jurors truly cannot set aside two sentences of an opening statement after being told that openings are not evidence, how can we trust them to disregard stricken testimony, ignore withdrawn questions, or consider evidence for one purpose but not another? The majority never explains why the presumption that jurors follow instructions and admonishments fails here, in the easiest imaginable case for its application.

Kelley was 20 years old when this crime occurred. By sentencing, he had spent 1,752 actual days in custody. When his first jury was finally sworn, he asked for nothing extraordinary, only that the court admonish the jury and proceed. The trial court refused. Kelley then waited thirteen more months under the weight of unresolved murder and attempted murder charges before a second jury acquitted him of both and found him guilty of a much lesser charge. During that time, the murder and attempted murder charges were not abstractions. They carried the possibility of decades in prison, demanded renewed preparation, and prolonged the stigma and anxiety spurred by such serious charges.

The Fifth Amendment, Article 1, Section 14 of the Indiana Constitution, and Indiana's successive prosecution statute (Indiana Code § 35-41-4-3) promised Kelley that his first jury would not be discharged absent manifest necessity. *See Washington*, 434 U.S. at 505; *Tyson*, 543 N.E.2d at 418-19. The trial court had a straightforward tool available—an admonishment—and never used it. Instead, it discharged a sworn jury over Kelley's objection because counsel made two improper comments about one of several witnesses to the crime. These statements were made to jurors who had just been told that opening statements are not evidence. A mistrial was not manifestly necessary.

I would reverse and remand with instructions to vacate Kelley's convictions and discharge him.